205 P.2d 216

**BOUNDS et al. v. CARNER et al.**

No. 5126.

Supreme Court of New Mexico.

Jan. 25, 1949.

Rehearing Denied May 4, 1949.

Mechem & Mechem, of Las Cruces, and Lee R. York, of Hobbs, for appellants.

Holt & Holt, of Las Cruces, for appellees.

BRICE, Chief Justice.

This action was brought by plaintiffs (appellees) to have adjudicated the rights of the parties and others, to the use of water flowing in the Penasco River and Wills Canyon, a tributary thereof; and to have decreed that defendants (appellants) and others and their agents, etc., be enjoined from using water, the right to the use of which, it is alleged, is in the plaintiff Bernie Bounds, and by him leased to plaintiffs. The case was dismissed as to all defendants except J. J. Carner, I. N. Bounds, Lita Polson and Shelby Davis (who will hereafter be styled defendants) against whom a decree was entered adjudging that plaintiffs are entitled to the use of water to irrigate 15.40 acres of land as lessees of Bernie Bounds; that defendants were using all or a part of this water to plaintiffs' injury, by reason of which they should be, and were, enjoined from such use except for domestic purposes. From this decree the defendants have appealed.

The findings of fact entered by the court are not attacked, except by the following assignment of error, and argument thereunder:

"The court erred in finding that Shelby Davis interfered in the use of water of Wills Canyon by the appellees."

The defendants requested the trial court to make fourteen separate findings of fact, all of which were refused. No errors were assigned because of such refusal. It follows that the facts found by the trial court are the facts upon which the case must be tried here insofar as they apply to defendants, except Davis. They will be binding on Davis unless we conclude that there is no substantial evidence to support the finding attacked by him. The findings of the trial court, unless stricken, are the facts upon which the case must rest in this court. In re White's Estate, 41 N.M. 631, 73 P.2d 316; Krametbauer v. McDonald, 44 N.M. 473, 104 P.2d 900.

The substance of the material facts found by the trial court are as follows:

The plaintiffs are partners doing business under the firm name of Bernie Bounds and Company. The plaintiff Bounds owns certain lands to which a water right is appurtenant. By a decree of the United

States District Court for the state of New Mexico, entered May 6, 1933, in Cause No. 712, entitled "The United States of America v. Hope Community Ditch et al.," initiated in the year 1920, and hereafter referred to as the "Federal suit", it was, among other things, adjudged and decreed that the Southwest Lumber Co., plaintiff Bound's predecessor in title, had a vested right, with priority of 1883, to divert water from the Penasco River and Wills Canyon, a tributary thereof, for the proper irrigation of 15.40 acres of land now owned by plaintiff Bounds, with a maximum water duty of three acre feet per annum per acre, delivered on the land. This decree was effective as of June 15, 1931. That since that date the water right so established and decreed has been exercised by the owners by the application of water to a beneficial use, to the extent that the water was available. The streams mentioned are natural water courses; and the waters thereof were subject to appropriation, and were appropriated as such and so applied by plaintiff Bounds and his predecessor in title.

The purpose of the Federal suit mentioned was, among other things, to adjudicate the rights of the parties thereto to the use of the water flowing in the Pecos stream system, including its tributaries; among which is the Penasco River and its tributary Wills Canyon. In that suit the defendants Lita Polson (then Lita Bounds), Shelby Davis, G. P. McShan, predecessor in interest of J. J. Carner defendant here, and Frank Weems, predecessor in interest of I. N. Bounds defendant here, were defendants. The defendants Lita Polson and Weems were duly served with process but did not answer in the Federal suit. The defendants Shelby Davis and McShan filed answers therein. The decree mentioned adjudicated the water rights for and against each and every defendant named therein; also fixed and determined the water rights of each of the several defendants having any, as against the water rights of the plaintiff and of each and all of the defendants.

There was adjudicated to the Southwest Lumber Company, predecessor in interest of plaintiffs, water sufficient to irrigate 15.40 acres of land from the Penasco River and Wills Canyon, a tributary thereof, and fixed the maximum water duty at three acre feet per annum per acre of irrigated land, delivered on the land.

No water right in or to the waters mentioned was adjudicated as being vested in the defendants, or either of them, or to any of his, her, or their predecessors in title. The evidence does not disclose that either of these defendants acquired any water right since the effective date of the Federal court decree. It does not appear from the evidence that prior to the year of 1945 the use of the water of the Penasco River or Wills Canyon by the defendants,

or any of them, impaired or interfered with the use of plaintiffs' adjudicated water rights; but during that year and since, their use has interfered with the plaintiffs and their appropriated water.

The defendants are reputed to own lands adjacent to the Penasco River or Wills Canyon, situated about the point, or points, of diversion for the use of water on plaintiffs' lands.

The defendants, prior to 1945 and up to the time of the filing of this suit, had been, and were, diverting the waters of the Penasco River and Wills Canyon for the irrigation of portions of their lands, notwithstanding written protests and notices to desist. In the years of 1945 and 1946 the waters of the streams mentioned decreased materially, so that the diversion of the waters therefrom by the defendants had deprived, and was depriving, plaintiffs of the quantity of water to which they were entitled under their appropriation, and such shortage had continued to exist, until the trial of this suit.

Such diversion of water by defendants during 1945 and since has interfered with the use and enjoyment of the water appropriated to plaintiffs, and is still so doing.

None of the defendants is shown by the evidence to have acquired, or to now hold, a valid water right in or to any of the water of the Penasco River and Wills Canyon.

From the facts found, the trial court concluded that Bernie Bounds was the owner of certain lands described in plaintiffs' complaint, to which was appurtenant a "duly adjudicated, valid and subsisting water right to irrigate 15.40 acres thereof, as adjudicated by the United States District court in said cause." (The Federal suit.) That the decree therein is binding on the defendants and is res adjudicata as to them, and each of them. None of the defendants was granted, or adjudged to be entitled to, a water right in the Federal suit, and since the entry of the decree therein none of them has acquired a valid water right in or to the waters of the Penasco River or Wills Canyon, by prescription or adverse user. None of the defendants is the owner or holder of a valid water right in the waters of the Penasco River or Wills Canyon.

The adjudicated water right of Bernie Bounds has priority over any water right in or to the waters of the Penasco River or Wills Canyon, or either of them, claimed by any defendant.

The defendants assert that the trial court erred in finding that the defendant Davis interfered in the use by plaintiffs of the waters of Wills Canyon. The defendant Davis introduced testimony tending to prove that he had used water on his lands

**239**

since the early eighties, and that plaintiffs did not object thereto until 1945. Also, that the plaintiff Bound's predecessor in title was not entitled to the use of the amount of water decreed to it in the Federal suit; and not until long after the entry of the decree therein did plaintiff Bounds or his predecessor in title irrigate 15.40 acres of land. However that may be, the trial court determined otherwise; also, that defendant had not legally appropriated any water from the flow of the Penasco River or Wills Canyon, and these findings are not attacked. The findings of fact are binding on the defendant Davis as well as the other defendants; and on these facts the case must rest here. Daniel v. Clark, 39 N.M. 494, 50 P.2d 429.

It is asserted that the trial court erred in admitting a copy of a map which was said to be a part of a hydrographic survey used in the Federal court case, and made a part of the decree. "This map does not have any certificate of any kind or character showing that it is a copy of the map referred to in the final decree and was not admissible in evidence." The question was not argued.

Also, it is asserted that the trial court erred in admitting in evidence a copy of the final decree entered in the Federal case, for the stated reason "that the same is not properly authenticated." The ques-

tion is not argued, nor is it claimed that defendants were prejudiced thereby.

The burden is upon the appellant in cases tried to the court to show that he was prejudiced by the erroneous admission of the evidence and no attempt was made to show prejudice. Robinson v. Mittry Bros., 43 N.M. 357, 94 P.2d 99; Keil v. Wilson, 47 N.M. 43, 133 P.2d 705, 148 A.L.R. 397; Goldenberg v. Law, 17 N.M. 546, 131 P. 499.

Assuming that it was error to admit the map and decree in evidence, questions we do not decide, no prejudice is shown to have resulted therefrom.

It is urged that the injunction against the defendants Polson, Bounds and Carner, restraining them from the use of water of the Penasco for the irrigation of their lands, is error "for the reason that the evidence shows that in their natural state the waters of the Penasco did (not) flow down to the lands of the appellants, and that it has been necessary for defendants every year to clean the springs and cienegas in order to get water for the irrigation of their lands." This point seems to be based, as defendants assert, on their requested findings of fact numbered 1 to 5 and 12, and their conclusion of law number 1. No error is assigned on the court's failure to adopt any of these requested findings, for which reason we

will not consider the point. Williams v. Kemp, 33 N.M. 593, 273 P. 12. No asserted error will be reviewed by this court in the absence of a supporting assignment of error. Williams v. Kemp, supra.

█ It is asserted that the court erred in refusing to permit the defendants to amend their answer. The only statement in their brief regarding this assignment of error is the following:

"The only additional matter is found (Tr. 15-16) and constituted an additional ground of estoppel. This is an equity case, and as we understand the rule to be, the court should be liberal in permitting amendments. The facts as set up in the amendment would have constituted a complete estoppel."

It does not appear whether the request to amend was made before, during or after the trial. The nature of the requested amendment is not stated; nor does it appear that the amendment is authorized under Rule 15 of the Rules of Civil Procedure, 1941 Comp. § 19-101. It is true that amendments are liberally allowed, but there are limitations on the right to amend, and under some circumstances permission to amend rests in the discretion of the trial court. From defendant's statement above quoted we are unable to say that the trial court erred in refusing to permit defendants to amend their answer.

It is said that the trial court erred in holding that the Federal court decree was res judicate as to the facts decided, for the reason that the plaintiff United States of America not having "any right, title or interest in the waters involved in said cause had no jurisdiction to bring the suit."

█ This is a collateral attack upon the jurisdiction of the court. The general rule adopted by this court is that unless the judgment roll shows upon its face that the court was without jurisdiction to enter such decree the judgment is binding on the parties.

██ It is asserted, "The only ground on which the court could have had jurisdiction was that the United States had some interest in the waters * * *" and "The complaint does not allege that the United States owned lands having water rights." The trouble is the complaint does not allege that the United States did not have water rights. If we assume that the United States was without authority to bring the suit unless it owned water rights, the presumption will be that it did own such water rights, in the absence of specific statements in the judgment roll to the contrary.

In McDonald v. Padilla et al., 53 N. M. 116, 202 P.2d 970 we stated:

"The rule is that as against a collateral attack, a judgment is valid unless the contrary appears in the judgment roll, and the

omission of every step in the proceedings except the entry of the judgment, does not overcome the conclusive presumption of regularity of a judgment when collaterally attacked, if the record does not affirmatively disclose the omissions."

We further stated:

"Every presumption not inconsistent with the record, is to be indulged in favor of the jurisdiction of courts of general jurisdiction whose judgments are collaterally attacked".

The jurisdiction of the trial court cannot be questioned unless the lack of it appears affirmatively in the judgment roll. The fact that the complaint does not show that the United States owned water rights is not sufficient. There must be an affirmative showing that it did not own water rights, if the ownership of water rights by the United States was necessary to give the court jurisdiction.

It is said that the decree in the United States District Court was not res judicata as between the parties here, for the following reasons:

1. The plaintiffs' predecessors in title and these defendants and their predecessors in title, did not claim or assert any interest in the waters in question adverse to each other, and the court was not called upon to adjudicate the rights between plaintiffs' predecessors in title and those of the defendants or their predecessors in title.

2. That the stipulation between the United States and the Southwest Lumber Company, predecessor in title to the plaintiff Bernie Bounds, was not entered into between defendants or their predecessors in title.

3. Because the decree did not adjudicate all of the waters in the Penasco but only the rights of certain parties therein named.

4. Because there is no finding in said decree that the defendants or their predecessors in title are not entitled to any of the water of the Penasco or Wills Canyon.

5. For the reason that the decree only attempted to define the water rights within the hydrographic survey made pursuant to the order of the court and referred to in the decree, and no survey was introduced in evidence showing that the lands of defendants were included in said survey.

6. For the reason that said decree did not describe specifically tracts of land to which the water rights are therein set out or appurtenant; that said decree is indefinite and uncertain and too general in terms to constitute an adjudication of water rights. That the following are parts of the Federal court decree:

"That this decree shall not be construed as having adjudicated, determined or affected the title to any land or rights to

any property whatsoever, other than the rights to the diversion and the use of the water as herein determined and established."

"That no accurate or proper description of many tracts and parcels of land to which water rights are herein said to be appurtenant, and as many diversions, distributions and storage dams, canals, ditches, reservoirs and other irrigation works through which the water rights herein adjudicated are exercised and enjoyed, have been shown or can be shown upon and by reference to the Pecos River Hydrographic Survey Map received in evidence in this cause; that for the purpose of identifying said tracts and parcels of land not hereinafter or otherwise identified or described, and for the purpose of showing the identity and location of such irrigation works generally, the said Pecos River Hydrographic Survey Map received in evidence in this cause are hereby referred to and made a part of this decree."

 Regarding the first question of res judicata, we are confronted with the fact that the pleadings of the plaintiffs' predecessor in title were not introduced in evidence, and we are not advised whether it asserted any interest in the waters in question adverse to the defendants here. However that may be, the bill and decree show that the suit was brought to adjudicate the rights (if any) of all the parties thereto to the use of water flowing in the Pecos River Stream System, presumably as provided by Ch. 77, Art. 4, N.M.Sts.1941, a proceeding for the adjudication of water rights of stream systems. Sec. 77-408 of the statute is as follows:

"Upon the adjudication of the rights to the use of the waters of a stream system, a certified copy of the decree shall be prepared and filed in the office of the state engineer by the clerk of the court, at the cost of the parties. Such decree shall in every case declare, as to the water right adjudged to each party, the priority, amount, purpose, periods and place of use, and as to water used for irrigation, except as otherwise provided in this article, the specific tracts of land to which it shall be appurtenant, together with such other conditions as may be necessary to define the right and its priority."

A part of the prayer of the complaint is as follows:

"That the court by its decree determine and fix the relative rights of the parties hereto in and to the waters of said Pecos River Stream System in New Mexico * * * to the end that there may be known and established the land upon which the water is used, the amount of water so used, the priority, the purpose for which used, etc." "together with such other conditions as may be necessary to de-

fine the right and relative priority of each and every party thereto."

It is true that a stipulation made between certain parties and the predecessor in title of the plaintiff Bernie Bounds was not signed by the defendants or their predecessors in title. However, it was the judgment of the court as to all defendants; although in the nature of a contract as between some of the parties. It operates as res judicata as between the parties to that suit, or their privies, as any other judgment would. 31 A.J. "Judgments" Sec. 464.

 The third ground upon which it is claimed that the decree is not res judicata is that all of the water right owners were not made parties to the suit. In a suit of that magnitude, it is almost certain that some interested persons will not be made parties. The Roaches, who were defendants below, apparently had water rights, but were not made parties to the suit. A statute under which the suit was instituted provides:

"In any suit for the determination of a right to use the waters of any stream system all those whose claim to the use of such waters are of record and all other claimants, so far as they can be ascertained, with reasonable diligence, shall be made parties." Sec. 77-406, N.M.Sts.1941.

It is thus provided for the eventuality that some persons might not be made parties to the suit who claim the right to the use of the water from the stream system involved. The fact that all of the persons entitled to the use of water from the Pecos River Stream System were not made parties to the Federal suit does not invalidate the decree. It is binding on all who were parties.

 The fact that there was no finding in the Federal decree that the defendants or their predecessors in title are not entitled to any of the water of the Peñasco River or Wills Canyon does not affect the binding force of the decree upon defendants as to the water right adjudged to be in the plaintiff's predecessor in title.

According to the decree the water right of each defendant was fixed and determined as against plaintiff and against every and all other defendants; as the following provisions therein show:

"That it is the intent and purpose of this decree, and it shall be so construed, to fix and determine, not only the water rights of the plaintiff, the United States of America, as against the water rights of each and every defendant herein, but to also fix and determine the water rights of each and every defendant herein as against the water rights of said plaintiff and of each, every and all other defendants inter se.

"That each and every of the parties to this suit, his, hers, or its successors and assigns, and his, hers or its agents and servants, be and they are hereby forever restrained and enjoined from violating or attempting to violate any of the provisions of this decree; from interfering with or attempting to interfere with any other party hereto, his, hers or its successors and assigns, in the lawful or proper use of water under such rights herein decreed. * * *"

It may be that the court in that case determined that the defendants had no water rights. The decree is silent on the question, but the Hydrographic Survey shows no irrigated land in the name of either of these parties or any predecessor in interest.

▆▆ Regarding the assertion that the decree is indefinite and uncertain in that it did not describe specifically the tracts of land to which water was determined to be appurtenant, we think it cannot be maintained. Reference was made to the hydrographic survey in evidence in this cause for the identification of the tracts or parcels of land subject to irrigation, and plaintiffs' tracts are identified as those in the name of C. A. Carlisle, as follows: 4.36 acres and 6.96 acres, a total of 11.32 acres lying north of the Penasco River; and 3.27 acres and .58 acres, making 3.85 acres lying at the confluence of "Willis" (Wills)

Canyon and the Penasco River, also in the name of C. A. Carlisle.

Whether the Federal court decree is res judicata of the rights of these parties is immaterial. The trial court found that the plaintiff Bounds had, by that decree, an established water right for 15.40 acres of land of the priority of 1883; that the right had been continuously exercised since the date of such adjudication, except at such times as no water was available; that such water had been available until 1945; and the following mixed findings of fact and law:

"That in and by the aforesaid (Federal) decree, no water right in or to the aforesaid waters was adjudicated as existing, or as being vested in or granted to the hereinabove named defendants, Lita Polson (formerly Lita Bounds) Shelby Davis, J. J. Carner, or I. N. Bounds, or any thereof, or in or to the predecessors in interest of any thereof

"That no such water right is shown by the evidence to have been acquired by said last named defendants, or any thereof since the aforesaid effective date of the aforesaid decree.

"That none of the defendants, J. J. Carner, I. N. Bounds, Lita Polson, or Shelby Davis, is the owner or holder of a valid water right in or to any of the waters of the aforesaid streams."

It is claimed that defendants have used the water for a length of time that established their right to the use of it by limitation and prescription, which defendants assert is a period of ten years.

 The finding of the court is that the plaintiffs had sufficient water to irrigate their 15.40 acres of land until 1945, at which time the flow of water in the Penasco River and Wills Canyon had materially decreased so that the water was insufficient to irrigate their land. Limitation did not begin to run from the date water was used by defendants; but from the date their use deprived plaintiffs of their appropriated water, which was 1945. Wimer v. Simmons, 27 Or. 1, 39 P. 6, 50 Am.St. Rep. 685; Smith v. Duff, 39 Mont. 374, 102 P. 981, 133 Am.St.Rep. 582; Miller v. Wheeler, 54 Wash. 429, 103 P. 641, 23 L. R.A.,N.S., 1065; Egan v. Estrada, 6 Ariz. 248, 56 P. 721.

Defendants acquired no right to the use of plaintiffs' appropriated water by limitation or prescription.

The decree of the district court should be affirmed, and it is so ordered.

LUJAN, SADLER, and COMPTON, JJ., concur.

McGHEE, J., did not participate.