225 P.2d 136

**GUNDERSON et al. v. SAGE et al.**

No. 5283.

Supreme Court of New Mexico.

Dec. 8, 1950.

Grantham & Bratton, Albuquerque, for appellant.

John E. Perry, George E. McDevitt, Gallup, for appellees.

COMPTON, Justice.

The trustees of a trust, having as its primary purpose the sending of relief to prisoners of war, brought this proceeding to construe the terms of the trust and for determination of beneficiaries.

On or about September 1, 1942, the citizens of Gallup, McKinley county, and Grants, Valencia county, organized and

sponsored a fund raising campaign for the relief of members of the 200th Coast Artillery (AA), then prisoners of the Japanese, in the Philippine Islands. The proposition was initiated by John Church, of Bluewater, New Mexico, and Salinas, California. The produce growers of that vicinity took the lead by donating a car of carrots which was shipped by him to Mark Yeckes, his business associate in New York, and sold at public auction September 9, thereafter. It was learned prior to the sale, however, that the Japanese Government had refused to grant safe passage to the Red Cross, or other relief agencies, carrying supplies to its prisoners of war. Faced with the discouraging news and the probable adverse effect it would have upon the sale, Yeckes suggested to Church that $3,000 be raised locally to stimulate public bidding as the first crate of carrots should sell for not less than $3,000. The Bataan Relief Organization was invited to join the campaign but it was unable to participate, financially. The citizens of Grants, Bluewater and Gallup, however, raised $3,844.82 and $2,000 was sent to Yeckes to be used as previously mentioned. The sale netted $9,606.71. The movement continued for some time and there is now in the trust fund $13,454.52. Due to the exigencies of war, the fund was never used. The trustees, being unable to determine whether the trust has failed, seek a construction of its terms and a determination of beneficiaries.

Appellant, successors to the interest of the Bataan Relief Organization, contends that since the primary purpose has failed, the doctrine of cy pres is applicable and that the funds should be administered in behalf of all Bataan veterans of New Mexico.

Appellees, Sage et al., concede that the primary purpose has failed, but contend that there was a secondary purpose whereby the funds were to be divided only between the returning prisoners of Valencia and McKinley counties. The cause was tried to the court and the findings, material to a decision, are:

"9. That on or about September 1, 1942, a delegation from the village of Grants, New Mexico, headed by the plaintiff, Carroll G. Gunderson, together with a number of citizens of the Town of Gallup, New Mexico, held a meeting at Gallup, New Mexico, and there decided to solicit funds from the public at Gallup and elsewhere for the relief of members of the 200th Coast Artillery (AA) from Valencia and McKinley Counties, who were prisoners of the Japanese in the Philippine Islands, such funds in the form of relief to be sent over on the first available Red Cross ship which according to International Law would be permitted to deliver relief to said prisoners, and, if said funds so raised could not be used for the purpose aforesaid, among the various Bataan pris-

oners, residing in McKinley and Western Valencia Counties, in the State of New Mexico who finally returned from their imprisonment.

"10. The funds raised in the State of New Mexico were donated by people residing either in McKinley or Valencia counties.

"11. That all of the donors residing in McKinley or Valencia Counties did know or could have readily discovered the purpose and object of said trust and that the secondary purpose thereof was that said funds were to be used by dividing the same aong the various Bataan prisoners residing in McKinley and Valencia counties who finally returned from their imprisonment in the event said funds would not be used for the primary purpose aforesaid.

"12. That the State Bataan Relief Organization was requested to participate in the drive, but was unable to do so. However, its President, Dr. Spensley, and its Secretary each made a contribution and permitted the name of the organization to be used upon a banner attached to the refrigerator car which shipped the carrots to New York.

"13. At the said meeting held on or about September 1, 1942, described in Finding of Fact No. 9, it was proposed by the Grants delegation that there be solicited and raised in Gallup at least $1,000.00 and at Grants at least $1,000.00 and that the shippers shipping carrots out of Grants, New Mexico, would provide $1,000.00, the total of which fund was to be used for bidding on a carload of carrots which were to be shipped to New York and auctioned off to raise funds for said relief fund."

"24. * * * that the New York donors adopted the purposes of the trust as it was organized in Gallup, New Mexico; that all of the donors have abandoned any claim to the trust funds and have acquiesced in the original purposes, both primary and secondary, of the trust as organized in Gallup, New Mexico, on or about September 1, 1942.

At the initial meetings at Grants and Gallup, the question arose whether relief would reach the prisoners and a secondary purpose was proposed and agreed upon. We quote briefly from the witness, Church, as follows: " * * * *the question was raised on the first meeting that was held here in Grants, by Dr. Pousma, that if we couldn't get medical supplies to the boys on Bataan, what would happen to it,* and there was quite a little discussion, of which I don't remember all of it, *but the final outcome was that it was specifically stated that if the supplies or medical supplies couldn't go on these mercy ships, that the money would be held intact for those boys who returned home from western Valencia and McKinley County."* (Emphasis ours.)

The witness, Pousma, testified similarly: "Well, Mr. Gunderson came with this proposition, he said that shortly before this, there was some vegetable growers in Salinas, California, who had put on a campaign to auction off some vegetables and that at that time, if I remember correctly, they raised about $50,000, * * *. We were all very deeply interested in those Bataan boys, and we thought that would be a splendid idea. However, it was on that day, or prior to that time that we had heard that the ship which Salinas wanted to send to Japan had been held up, that they couldn't get the stuff over there, *so at the first meeting this proposition was raised, suppose that we can't send that stuff over there, what will we do with our money,* and we wanted, they decided before, we in Gallup would start raising any money at all for this thing, and I think I made the suggestion myself at that time, because I remember how hard up the boys were at the end of the first World War, and I put up this proposition. I said, now, some of those boys are likely to have a tough time of it the first few months, now then, suppose that we could have that money left for them at the time that they come back and we will distribute that money to them. It might mean several hundred dollars apiece to them. That would be a wonderful thing to get those boys started after they got back to the United States. And then Mr. Gunderson spoke up, and I remember his words rather clearly, he said, * * *, *if that happens we are going to send that money for the boys of McKinley and Valencia County,* because he was peeved at Albuquerque for not wanting to chip in with this thing. * * * *I was very much concerned about it, because I was extremely skeptical that that money would get to Japan, and that's why I wanted it understood at that first meeting what would happen to that money if we couldn't get to Japan. That's what we wanted to know, if we couldn't get to Japan, what would happen to it then, and we wanted it clearly understood at that meeting* because we were, there were skeptics concerning that matter then." (Emphasis ours.)

The trial court admitted in evidence, various articles and editorials published in New York as well as Albuquerque and Gallup bearing upon the question of the public appeal. It would unduly extend the opinion to quote from these publications. Noticeably, five of the articles stated a primary purpose only, the New York Times, the New York Sun, the Albuquerque Journal and The Albuquerque Tribune. The New York Times announced a primary purpose and subsequently a secondary purpose. The Albuquerque Tribune did likewise. The Auctioneer, published in New York City, states that the primary purpose is to relieve the distressed families of the prisoners on Bataan. Of the articles announcing a primary, or a primary and a

secondary purpose, five state it correctly; the sending of relief to the military prisoners on Bataan and Corregidor. Three of the articles announcing a primary purpose, confine relief to New Mexico prisoners of war, and one would give the funds to the Bataan Relief Organization. Of the articles stating a secondary purpose, one states that the fund would be held in trust for the men or their families, one that the funds would be held in trust for the men upon their return home, and two define the secondary purpose as assisting the families of the prisoners.

That confusion attended the appeal and the resultant giving cannot be questioned, nevertheless, the purpose of the trust remains clear. Perhaps no other incident exercised the public mind so sympathetically as the news that our soldiers on Bataan and Corregidor, starving and ill, had surrendered. Equal concern was had for their families. Obviously, the purpose of the previously organized trust was accepted by those donating to it. Turbeville v. Morris, 203 S.C. 287, 26 S.E.2d 821; Trustees of Andover Theological Seminary v. Visitors of Theological Institution in Phillips Academy, 253 Mass. 256, 148 N.E. 900; Mechanicville War Chest v. Butterfield, 110 Misc. 257, 181 N.Y.S. 428.

■ The findings are amply supported by the evidence and will not be disturbed upon appeal. Sundt v. Tobin Quarries, Inc., 50 N.M. 254, 175 P.2d 684, 169 A.L.R. 586; Bounds v. Carner, 53 N.M. 234, 205 P.2d 216.

■ Appellant also contends that the court erred in finding that one half of the fund was to be divided equally between the returning prisoners of west Valencia county and the remaining one half equally between those of McKinley county. Appellant is in no position to complain of the alleged error. That the court may have erred in this regard, does not aid appellant. Without a showing of prejudice, it is in no position to question the ruling. Possibly donors or beneficiaries could have successfully objected, but the question is not open to review since they do not complain.

Appellant also assigns as error the refusal of the court to make certain requested findings. The findings requested are in conflict to those made by the court and are within themselves a challenge to the sufficiency of the evidence to sustain the findings made. We see no beneficial purpose in a further discussion of this alleged error.

The judgment will be affirmed and it is so ordered.

BRICE, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.