319 P.2d 207

STATE of New Mexico, on the relation of John H. BLISS, State Engineer, Appellant,

v.

J. C. DAVIS, V. L. Gates, Lottie L. Parkhill, Nan Parkhill Jones, Mary Elizabeth Parkhill, George B. Parkhill, John H. Parkhill, Dora D. Purcell, and William B. Parkhill, Appellees.

No. 6228.

Supreme Court of New Mexico.

Dec. 3, 1957.

all about and just how the trial court settled the issuable phases of the facts appearing in evidence by setting them forth at the outset. They are as follows:

"Findings of Fact.

Fred M. Standley, Atty. Gen., Charles D. Harris, Sp. Asst. Atty. Gen., Roswell, for appellant.

Donald Brown, Roswell, Wm. M. Siegenthaler, Artesia, for appellee Davis.

Neil B. Watson, Artesia, for appellee Gates.

Frazier & Cusack, Roswell, for remaining appellees.

SADLER, Justice.

This is an appeal by the State on the relation of John H. Bliss as State Engineer from a decree of the district court of Eddy County refusing to enjoin the defendant at the instance of relator from taking waters from the Pecos River for irrigating certain lands described in the complaint and dismissing the complaint filed in said cause seeking such relief.

■ We have frequently said, too often to require the citation of authority to support the declaration, that the findings of the trial court are the facts upon which the appeal will be determined. Inasmuch, therefore, as they appear in the record on the whole in narrative form, we may best give a true picture of what the case is

"1. That the defendant, V. L. Gates, acquired title to the S½ of Section 25, Township 16 South, Range 26 East, N.M.P.M., Eddy County, New Mexico, by warranty deed dated April 3, 1937, from Kansas City Life Insurance Company, he remained in possession of the premises until October 28, 1947, when said lands were sold to J. M. Parkhill, Sr., under the terms of a purchase contract; that J. M. Parkhill, Sr., remained in possession of said lands from October 28, 1947, until September 14, 1950, and on that date the defendant J. C. Davis, purchased said lands under the terms of a supplemental contract and consent executed by the defendant, V. L. Gates, J. M. Parkhill, Sr., and the defendant, J. C. Davis; that the defendant, J. C. Davis, has been in possession of said lands ever since September 14, 1950.

"2. That the office of the New Mexico State Engineer was created by the New Mexico Legislature effective March 19, 1907, and prior to the creation of said office, and on April 10, 1903, the predecessors in title to the

defendants and the then owners, David C. Richey, John E. Richey and James C. Hamilton, recorded a sworn declaration of appropriation and diversion of water out of the Pecos River for irrigation on the lands in question, which instrument is recorded in Book 8 of Deed Records, at Page 307, in the office of the Eddy County Clerk, and prior to March 19, 1907, waters were diverted from the Pecos River by means of a pumping plant situated in the SE¼SE¼ of Section 23, Township 16 South, Range 26 East, and were applied to beneficial use upon the entire S½ of Section 25, Township 16 South, Range 26 East, where crops were grown to and including the year 1907, when the State Engineer's office was created by law.

"3. That between the year 1907 and the year 1923, there was no period of time as long as four continuous years when waters were not diverted from the Pecos River by the predecessors in title to the defendants and applied to beneficial use upon the S½ of Section 25, Township 16 South, Range 26 East.

"4. That the S½ of Section 25, Township 16 South, Range 26 East, is situate in a low area adjacent to the Pecos River, and by reason of its location, when floods occur upon the Pecos River, said lands are covered by flood waters and large amounts of silt and debris are deposited on the lands, rendering them unfit for cultivation for a considerable period of time after any flood, which conditions result from circumstances beyond human control, and by reason of the chemical makeup of water in the Pecos River, when the river waters become low, the salt and mineral content of such water increases in concentration to a point where such waters are not fit for irrigation, which conditions are brought about by circumstances also beyond human control.

"5. Between the years 1923 and 1937, there was no period of as long as four continuous years when waters from the Pecos River were not appropriated and applied to benefical use upon the entire S½ of Section 25, Township 16 South, Range 26 East, ·or when other circumstances which were beyond human control did not intervene to prevent application to beneficial use, including particularly flooding conditions and resultant damage to the lands, or excessively low water and resultant concentrations of minerals making the water unfit for irrigation purposes.

"6. From 1937 to the date this action was brought, waters have been appropriated from the Pecos River and applied to beneficial use upon the

entire S½ of Section 25, Township 16 South, Range 26 East, with the exception of certain years, including 1941, when flood or drought conditions intervened to prevent beneficial use of such waters through diligent efforts of the then owners which were brought about by circumstances beyond human control.

"7. That the agents, employees and representatives of the State Engineer have been on the lands at various times since as early as 1929, and at all times material hereto, the plaintiff, through its employees, agents and servants, has had actual knowledge of the method and manner of use and appropriation of waters upon the lands in question, but no action was taken by the plaintiff to determine the validity of river water rights appurtenant to the land until in 1941 when action was brought in the District Court of Eddy County, New Mexico, against the present defendant, V. L. Gates, seeking the entry of a permanent injunction; that immediately thereafter the said V. L. Gates conferred with the then New Mexico State Engineer, John McClure, who requested that the said V. L. Gates file a declaration of ownership of water rights based upon the water right which had been in existence prior to creation of the office of the New Mexico State Engineer, which declaration was filed by the defendant, V. L. Gates, on or about November 13, 1941, and was assigned No. 0939 in the office of the New Mexico State Engineer; and shortly thereafter the then pending injunction action was dismissed at the instance and request of the plaintiff.

"8. On December 20, 1949, the then State Engineer, John H. Bliss, at the instance and request of the defendant, V. L. Gates, wrote and signed a letter addressed to the Eddy County Agricultural Committee, a copy of which was received in evidence, in which the then state Engineer stated that as far as the records in the State Engineer's office showed, Declaration No. 0939 was in good standing and constituted prima facie evidence of the right to irrigate the S½ of Section 25, Township 16 South, Range 26 East, together with other lands, with waters from the Pecos River, which letter and copies were delivered both to the Eddy County Agricultural Committee and the then owner under the signature of the New Mexico State Engineer.

"9. That the defendant, J. C. Davis, in entering into his purchase contract dated September 14, 1950, employed the services of a competent New Mexico attorney to examine title to the land in question and to express an

opinion as to the validity of the Pecos River water rights, that a copy of the State Engineer's letter bearing his signature dated December 20, 1949, was submitted to said attorney, along with abstracts of title, at the conclusion of which the defendant, J. C. Davis, was advised by said attorney that in his opinion there was a valid right to appropriate water from the Pecos River appurtenant to the real property in question, and the defendant, J. C. Davis, in reliance upon the Engineer's letter and the attorney's opinion as to the validity of such rights, purchased said lands and became obligated to pay a consideration of approximately $90,000.00, and immediately after the execution of such contract the defendant, J. C. Davis, went into possession of said lands and has continued in possession ever since.

"10. In reliance upon the Engineer's letter above described and the opinion of his New Mexico attorney, the defendant, J. C. Davis, between 1950 and the date this action was brought, has constructed numerous improvements upon the real property, including houses, tile irrigation lines, new pumps, and has done extensive land levelling in conformity with the soil conservation program of the United States of America, at a total expense of approximately $125,000.00.

"11. That without the right to appropriate water from the Pecos River, the S½ of Section 25 is practically valueless, and if waters are not applied to beneficial use on said lands from the Pecos River, the lands will become overgrown with salt cedar, grass and weeds, so that the lands and improvements thereupon located will be rendered of little or no value.

Conclusions of Law.

"1. On March 19, 1907, when the office of the State Engineer was created by law, the S½ of Section 25, Township 16 South, Range 26 East, had a valid right to appropriate waters from the Pecos River appurtenant thereto, that no license from the State Engineer is required by law; and the Engineer is without any jurisdiction as to such rights except jurisdiction to prevent waste, enforce forfeiture for non-use, and jurisdiction to administer such water rights generally.

"2. In order to enforce forfeiture for non-use, the plaintiff in this case had the burden of establishing that the waters of the Pecos River were not appropriated and were not applied to beneficial use for some period of four continuous years between 1907 and the date this action was commenced, and had the burden of proving that during each and every year of such four year continuous period the land could have

been irrigated, and there were no circumstances beyond the control of the owner which would prevent appropriation and application to beneficial use; that the plaintiff has not met the burden of proving the necessary elements to support a decree of forfeiture of the water right in question as against these defendants.

"3. The State and its administrative officers, agents and employees owe a *duty of honesty to and fair dealings* with the citizens of the State of New Mexico; that the plaintiff, acting through the agents and officers of the New Mexico State Engineer's Office, has been guilty of long unexplained delay in asserting any rights in the premises, and has adopted inconsistent positions respecting the validity of the water rights in question to the prejudice of the defendants, particularly the defendant, J. C. Davis, and it would be inequitable to decree the forfeiture of water rights in question, thereby violating the equitable maxim that he who seeks equity must do equity, and in addition, such a decree would result in the perpetration of a fraud on the defendants, including the defendant, Davis.

"4. That the plaintiff by its prior inconsistent position respecting validity of the water rights in question and its long, unexplained delay in enforcing its claimed rights, is guilty of laches, and the plaintiff is now barred by its own laches from asserting the rights claimed.

"5. That the plaintiff, acting through its administrative officers, agents and employees, has previously made representations concerning the validity of the water rights here in question which are entirely inconsistent with the plaintiff's position asserted in this action, that the defendants, and particularly the defendant, J. C. Davis, were justified in relying upon such representations and did rely upon them to their prejudice, so that the plaintiff is now barred and estopped by the conduct of its agents and officers from denying the validity of the water rights in question.

"6. *That a decree should be entered herein denying the relief sought by the plaintiff, decreeing that the defendant, J. C. Davis, is the owner of a valid right to appropriate waters from the Pecos River for irrigation to the extent of three acre feet per annum upon the* S½ *of Section 25, Township 16 South, Range 26 East, subject to the rights of the other defendants under existing purchase contracts, and that the defendants should recover their costs herein expended.*

"To all of which the plaintiffs except and object.

"Done at Deming, New Mexico, this 28th day of September, 1956.

"/s/ A. W. Marshall
"District Judge, 6th Judicial District, sitting in the place and stead of the Hon. George T. Harris by designation."

The lands involved in the suit are described in the complaint and decree as the South half of Section 25, Township 16 South, Range 26 East, N.M.P.M. The defendant, J. C. Davis, was adjudged to be the owner of a valid right to appropriate water to the extent of three acre feet, per acre, per annum upon the 320 acres of land above described in Eddy County, New Mexico, as declared in the decree, subject only to the rights of the remaining defendants under existing purchase contracts. And as may very well have been declared in said decree but was not, the water right adjudged to defendant, Davis, is, of course, subject, further and necessarily to the unadjudicated rights and priorities, whatever they may be, as between him, Davis, and all water users of the Pecos River, as settled and determined by the decree in said cause No. 712, Equity, entitled Hope Community Ditch v. United States, heretofore pending in the District Court of the United States for the District of New Mexico.

As will be seen from a reading of the trial court's findings, the defendant placed his chief reliance on a sworn declaration of appropriation and diversion of water filed in 1903 in the office of the county clerk of Eddy County, New Mexico, by predecessors in title of the defendant, David C. Richey, John E. Richey and James C. Hamilton for irrigation of certain lands, including the lands in question and recorded at page 307, Book 8 of the Deed Records of Eddy County, New Mexico. Said affidavit recited that waters were diverted from the Pecos River by means of a pumping plant in said river situated in SE¼ of SE¼ of Section 23, Township 16 South, Range 26 East, from which water was transported to the lands in question and applied to beneficial use upon it.

At the trial counsel for the plaintiff, the State Engineer, strove vigorously to establish through various witnesses that the rights claimed under the 1903 filing had never been perfected and if established had been abandoned and forfeited by four years nonuser. The trial court, as the findings disclose, found against the plaintiff in both respects. While it would be a stupendous task to recite the testimony and evidence for and against the defendant on these vital issues, it is enough to say it has been carefully considered by us and found to be substantial in all material respects in support of the findings made. So being, we are unable to overturn the findings and they are binding upon us on this appeal.

Perhaps the most hotly contested issue presented at the trial was in the effort of counsel for the plaintiff to secure the admis-

sion in evidence of portions of the hydrographic survey made under the supervision of the State Engineer for use in the trial of Equity Cause No. 712, Hope Community Ditch v. United States hereinabove mentioned. When it was disclosed, however, that neither the defendant, Davis, nor any of his predecessors in title or interest was a party to that suit, the trial court excluded from evidence the portions offered as well as certain findings of the Special Master and a purported stipulation signed by one, Muncy, found in possession of the land when the hydrographic survey was being prepared. The stipulation was to the effect that he claimed no water rights in the Pecos, though not being shown to be a predecessor in title of defendant. It was apparently secured for the purpose of determining whether he, as purported owner of the land, should be made a party to the suit out of which the Hope decree arose.

It is to be borne in mind that the water right relied upon by defendant was initiated in 1903 by the filing of an affidavit with the county clerk of Eddy County. This was prior to the enactment of the Water Code of 1907, which itself carried a savings clause for prior existing rights in the following language. L.1907, c. 49, § 59 (1953 Comp., § 75-8-1) reading:

"Nothing contained in this article shall be construed to impair existing vested rights or the rights and priorities of any person, firm, corporation or association, who may have commenced the construction of reservoirs, canals, pipe-lines or other works, or who have filed affidavits, applications or notices thereof for the purpose of appropriating for beneficial use, any waters as defined in section 151-101 (75-1-1), in accordance with the laws of the territory of New Mexico, prior to March 19, 1907; Provided, however, that all such reservoirs, canals, pipe-lines, or other works and the rights of the owners thereof shall be subject to regulation, adjudication, and forfeiture for nonuse as provided in this article."

The foregoing section finds its counterpart in Const. art. XVI, § 1, which reads:

"All existing rights to the use of any waters in this state for any useful or beneficial purpose are hereby recognized and confirmed."

■ We see no error in the trial court's action in denying admission of the hydrographic survey, or the portions thereof offered in evidence. We do not think the case of Bounds v. Carner, 53 N.M. 234, 205 P.2d 216, furnishes support for plaintiff's claim for admissibility of the hydrographic survey. There the plaintiff, Bounds, had an adjudicated water right under the Hope decree and the defendant was not shown to have a water right of any kind. The court did not actually pass upon the question of the survey's admissibility, being satisfied to say if error, prejudice was not shown to have resulted therefrom.

 This is a conclusion that very aptly applies to the present case. Testimony showed the data for the hydrographic survey was gathered between the years 1918 and 1923, whereas the forfeiture here claimed is said to have occurred between the years 1923 and 1937. So, even if there was error in failing to admit the hydrographic survey, it would have cast very little, if any, light on what transpired in the 14 years following. Naturally, the stipulation by Muncy and the findings of the Special Master in the Hope suit were irrelevant and incompetent. Muncy was not shown to be a predecessor in title or interest of defendant and the findings in a suit to which neither he nor his privies were parties would not be admissible against him.

Considerable discussion is devoted by plaintiff's counsel to the method of computing the period for which a forfeiture may be claimed. They assert it to be the view of the trial court and defendant's counsel that if non-use occurs for three successive years, say 1933, 1934, and 1935 but in 1936, due to a flood or other conditions beyond control of water-user, water could not be beneficially applied, a new starting point for limitations takes place and four continuous years' non-use subsequent to the flood must occur before a forfeiture can be completed.

The plaintiff insists, however, that running of the statute is merely suspended for the one year of flood and that an additional year of non-use immediately following the flood will complete the time essential for a forfeiture.

They cite the case of Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co., 104 Utah 202, 135 P.2d 108, which they claim supports their theory, though we doubt it. In addition, they cite us to two New Mexico cases, Chavez v. Gutierrez, 54 N.M. 76, 213 P.2d 597 and New Mexico Products Co. v. New Mexico Power Co., 42 N.M. 311, 77 P.2d 634, in which the forfeiture statute, 1953 Comp., § 75-5-26, has been construed but not in the respect here mentioned. Accordingly, they speak of the question as one of first impression here.

Counsel for defendant on the contrary say the question raised by plaintiff presents an interesting theory but has no application to the proof here present, an assertion with which we agree. They, therefore, think it neither necessary nor proper to decide the question here, having no application to the facts. Hence, we pass the question until it arises in a case where its decision is absolutely necessary.

 Still another question has caused plaintiff much concern and an unusual amount of space is devoted to it. We refer to the testimony of V. L. Gates, a predecessor in title of the premises in question. Indeed, he is the immediate grantor of the defendant, Davis. At a certain point in the progress of the trial, Gates was permitted

over the objection of counsel for plaintiff to relate a conversation with a former State Engineer, Tom McClure, touching the water right here claimed. While on the stand the witness, Gates, testified to a suit having been filed against him by the State Engineer in 1941 to enjoin him from taking waters from the Pecos. Shortly after being served with summons in the case he went to Santa Fe to talk with then State Engineer, Tom McClure, about the matters. Among other things, he testified:

"(Questions by Mr. Watson).

"Q. After that suit was filed against you, Mr. Gates, did you see Mr. Thomas McClure, State Engineer, and the plaintiff in that case? A. Yes, I got a copy of my right that had been filed at Carlsbad and went over to Santa Fe and talked with Mr. McClure and he said there had been a number of old rights that had appeared since the Hope Community trial and as far as those rights were concerned, he considered them valid rights.

\* \* \* \* \* \*

"Q. Go ahead, Mr. Gates. A. He said that was a perfectly valid right and he urged me to file in his office so that he would have a record of that right."

Counsel for plaintiff interposed an objection to the testimony as soon as the question was asked upon the ground it was hearsay and prejudicial but was overruled and the answer permitted to stand. Defense counsel seem content to deal with this matter by a claim that error in admitting this testimony on the ground it is hearsay can not be taken advantage of because:

"\* \* \* inasmuch as the appellant has not assigned the admission of this evidence as an error, and has not argued a point, we do not desire to answer this contention except to say that the predecessors in office would be as much a party to this action as the present State Engineer."

It should be pointed out that while owner of the land it became necessary for witness, Gates, to furnish affirmative evidence of water rights on the land in question in connection with the Federal Cotton Allotment Program. Accordingly, he contacted State Engineer John H. Bliss, present plaintiff, and secured from him a letter dated December 20, 1949, addressed to the Eddy County Agricultural Committee, Carlsbad, New Mexico, which reads, as follows:

"Eddy County Agricultural Committee
"Carlsbad, New Mexico
"Attention: Mr. Ogden, Chairman
"Dear Sir:

"This letter is written concerning the surface water rights of Mr. V. L. Gates of Artesia, New Mexico, claimed under declaration No. 0939. Our record shows that notice of appropriation of water by pumping from the Pecos River in Sec. 23, T. 16S, R. 26E, was filed in

Eddy County in April 1903 by Messrs. Richey, Richey & Hamilton for the irrigation of 480 acres in Sections 24 & 25 T. 16S, R. 26E. On November 15, 1951, Mr. V. L. Gates, the then owner of the land, filed declaration of ownership of water right No. 0939 stating that the 480 acres described in the original application had been irrrigated since April 1903 from the Pecos River.

"This right was not adjudicated under the Pecos River Decree of the Federal District Court; however, Mr. Gates assures me that he searched the record in the Federal Court and found that the Kansas City Life Insurance Company, then owner of the land, was not a party to the decree nor had it been a party to the suit. The fact that the lands in question were not adjudicated in that Court Decree did not necessarily mean that such right did not exist.

"The acreage irrigated at the present time varies somewhat from the acreage originally described. As far as the records of this office show, however, declaration No. 0939 for the irrigation of 480 acres from the Pecos River is of record in the State Engineer's Office in good standing as prima facie evidence of the right claimed.

"Very truly yours,
"John H. Bliss
"State Engineer"

Since the hearsay character of the testimony by Gates relative to his conversation with State Engineer, McClure, now deceased, was readily apparent and the trial was before the court, without a jury, (First State Bank of Alamogordo v. McNew, 33 N.M. 414, 269 P. 56); and, particularly, in view of the letter of like tenor from State Engineer, Bliss, present plaintiff, who consented to its admission, we are compelled to hold the error, if any, in the admission of the verbal statement of the former State Engineer, since deceased, was harmless. More especially is this true in view of the fact that the questioned testimony was put in evidence primarily on the issue of estoppel against plaintiff which for reasons to be stated, we find it unnecessary to determine.

■ There is also a claim of error on the part of plaintiff that the trial court erred in denying an application to amend the complaint, made after the answer of Davis and Gates was filed in the case in which they set up a claim to a water right for 480 acres of land. Actually, the decree awarded Davis a water right on 320 acres only; the acreage upon which plaintiff had sought the injunction and, as indicated, the acreage actually awarded by the decree. This was a matter strictly within the discretion of the trial court and we see no abuse of same on its part. Klasner v. Klasner, 23 N.M. 627, 631, 170 P. 745. We may add, further, that we can see no prejudice.

Counsel for plaintiff argue vigorously inconsistencies in certain facts pointed out by them, such as the physical impossibility in the 1903 affidavit as to work accomplished over a given period of time. Likewise, in the findings as to amount of expenditures made on the 320 acres of land in question by defendant, Davis, much of it being spread over the 990 acres purchased; and the consideration said to have been paid therefor, as impeached by the revenue stamps attached to the deed. These were matters for the trial court to resolve which, apparently, it was able to do in a manner not necessarily impeaching either the veracity or integrity of the parties involved.

■ Much of the time and space in the extensive briefs of the parties is devoted to the question whether the State Engineer, as an alter ego of the State in this proceeding, was estopped to claim a forfeiture of the water right in question, even if otherwise he might have prevailed. Our conclusion that there is substantial evidence to support the material findings on the merits renders it unnecessary to determine the interesting question raised by the parties on the issue of estoppel, particularly, whether the State itself can be estopped to assert its right in the administration of the public waters of the State. Hence, we pass a decision on this matter raised in the case. Compare, State ex rel. Erickson v. McLean, 62 N.M. 264, 308 P.2d 983.

Other questions are presented but they either are resolved by the conclusions announced or are deemed without merit.

It follows from what has been said that the judgment of the trial court is free from error and should be affirmed.

It is so ordered.

LUJAN, C. J., McGHEE and COMPTON, JJ., and CARMODY, District Judge, concur.