**SHIELDS v. SHIELDS.**

No. 16.

District Court, W. D. Missouri, Central Division.

Jan. 20, 1939.

T. A. Faucett, of Fulton, Mo., W. C. Irwin, of Jefferson City, Mo., and Robert Moore, of Gary, Ind., for petitioner.

A. W. Walker and R. M. Bagby, both of Fayette, Mo., for respondent.

COLLET, District Judge.

Habeas Corpus. Romie B. Shields is deprived of his liberty upon the ground that he is insane. Application is made to this Court for his release. By agreement of the parties certain legal questions are presented in advance of a consideration of the sanity of petitioner. Therefore, for the purposes of the determination of the questions now presented petitioner will be assumed to be sane, otherwise remand would follow regardless of any considerations affecting the jurisdiction of this Court or any lack of regularity in the proceedings leading to his restraint. King v. McLean Asylum, etc., 1 Cir., 64 F. 331, 26 L.R.A. 784. The facts are as follows:

More than thirty years ago petitioner moved away from Howard County, Mis-

souri. After living at various places in several other states he took up his residence in 1929 at Wichita, Kansas. He is a dentist by profession and owned and operated a rather pretentious dental office in the latter city. He appears to be the owner of real estate located in the State of Indiana valued at approximately eighty thousand dollars and real estate located at or near Wichita, Kansas, worth more than fifteen thousand dollars. At the time of the institution of the proceedings leading to this application he had cash in a Wichita bank amounting to about eleven thousand dollars. In addition to those possessions he owned household goods, an automobile and other personal property all located at Wichita, Kansas. In Howard County, Missouri, he owned three hundred acres of land which he inherited from his father.

In the early part of August, 1938, petitioner's brother Bernard L. Shields, who is a resident of Howard County, Missouri, received a telephone call from a person at Wichita, who was unknown to him, stating that it would be well for Bernard to go to Wichita to take charge of his brother Romie because Romie was losing his mind. Bernard went to Wichita and spent several days with his brother. He observed Romie's actions and decided his mind was affected. On August 18th a man named Menass suggested to Romie that a trip be made to Fort Wayne and Gary, Indiana, Romie to pay the expenses, the trip to be made in Menass' motor car. The suggestion was agreed to. Bernard was invited to return to his home with Menass and Romie as it would be necessary to pass close by Bernard's home anyway. Petitioner contends this invitation was the result of collusion between Menass and Bernard. This Bernard denies, but the arrangement was carried out. These three and two others left Wichita together on August 18th. The day before their departure petitioner had attended to his business at his office. On the 19th when the party reached Fayette, Howard County, Missouri, which was only a short distance from Bernard's home, Bernard asked that they stop at the Court House where he had some business to attend to before proceeding to his home. That was done. Unknown to petitioner and while the party was waiting for him, Bernard filed an information in the Probate Court of Howard County alleging that Romie was of unsound mind and incapable of managing his affairs and asking that an inquiry be held to determine his mental competency. A notice was prepared by that court directed to petitioner advising him that the information had been filed, that a hearing would be held August 24th for the purpose of making inquiry into the condition of his mind, to the end that if found to be unsound, a guardian of his person and estate would be appointed. The notice stated that petitioner was entitled to be present at the inquiry and be assisted by counsel. This notice was delivered to a Deputy Sheriff of the County. Armed with the notice and in company with Bernard, the Sheriff arrested petitioner as he stood on the sidewalk near the Court House and took petitioner and Menass to the county jail. Menass was released immediately but petitioner was kept there approximately two hours. During that time the notice was read to petitioner in the jail. Petitioner was then put into another automobile and immediately transported to Fulton, Callaway County, Missouri, and placed in State Hospital No. 1 for the insane located there. He was accepted by the authorities at the Asylum upon the written request of the Sheriff of Howard County that he be held as the Sheriff's prisoner "until proper commitment papers be executed and submitted." Verbal directions were given that petitioner be allowed to see no one. Upon discovery by counsel for Bernard that the notice issued August 19th was read to petitioner another notice was prepared and formally served on petitioner by the Sheriff of Callaway County at the Asylum. The latter notice was dated August 24th and fixed the date of the inquiry at August 31st. Otherwise it was to the same effect as the former notice heretofore referred to. Upon the 31st the hearing was held by the Probate Court. It is alleged and not denied that a rule existed at the Asylum that inmates would not be released for the purpose of appearing at hearings or for any purpose until discharged. Petitioner remained in the Asylum and was not taken to the hearing. On the 31st the Probate Court entered the following order:

"In the Matter of the alleged unsoundness of mind of Romie B. Shields.

"Order appointing Guardian of the person and estate of Romie B. Shields.

"Now on this thirty-first day of August, 1938, Court met pursuant to adjournment from the 23rd day of August, 1938, for the purpose of holding an inquiry whether Romie B. Shields be of unsound mind or not, and written notice to said Romie B. Shields signed by the Judge and ex-officio Clerk of this Court under the seal of this Court, having been returned by Hartley

Crowson, Sheriff of Callaway County, Missouri, in the following words and figures, to-wit: 'Sheriff's Return. Executed the within writ, in the County of Callaway and State of Missouri, on the 25th day of August, 1938, by delivering a certified copy of this writ, to the within named, Romie B. Shields. Fee $1.00 (Paid) Hartley Crowson, Sheriff of Callaway County, Missouri, By J. C. Owen, Deputy Sheriff.'

"And said cause coming on to be heard, comes the Informant in person and by his Attorney, but the said Romie B. Shields, although duly served with notice in writing as required by law comes not, but makes default, and no licensed Attorney having appeared for said Romie B. Shields, the Court appointed Lionel Davis, of Fayette, Missouri, a licensed Attorney at Law of said County and State, to represent said Romie B. Shields in said proceeding, and neither the said Informant, Bernard L. Shields, nor the said Lionel Davis, Attorney representing the said Romie B. Shields, calling for a Jury, the said matter and the facts were submitted to the Court sitting as a Jury, and the Court, sitting as a jury, having heard the evidence offered touching the residence, estate and condition of mind of the said Romie B. Shields, and having found from the evidence that said Romie B. Shields is a resident of Howard County, Missouri, and that he is of unsound mind and incapable of managing his affairs, and that he possesses a large amount of property in this State and elsewhere, returned its verdict as follows: 'The Court, sitting as a Jury, finds Romie B. Shields, a resident of Howard County, Missouri, to be of unsound mind and incapable of managing his affairs.'

"It is, therefore adjudged by the Court that said Romie B. Shields is a person of unsound mind and incapable of managing his affairs; that he is the owner of a large amount of property in Howard County, Missouri, and elsewhere, and that his place of residence is Howard County, Missouri, and the Court doth appoint Bernard L. Shields, of Howard County, Missouri, Guardian of said Romie B. Shields, and it is ordered that said Guardian before entering on the duties assigned him shall enter into a bond to the State of Missouri in the sum of Two Thousand Dollars ($2,000.00) conditioned as required by law with such security as the Court shall approve."

The information upon which this order was based stated that Romie was a resident of Howard County. It was signed and sworn to by Bernard. Bernard testified in the present cause that he was present throughout the hearing in the Probate Court but did not recall that there was any evidence offered in that court touching the residence of petitioner. When asked upon what his affidavit that Romie was a resident of Howard County was based he stated that Romie told him in a letter that he, Romie, intended some time in the future to move back to Howard County. The letter was produced and read in evidence. It merely directed Bernard to request the tenants of a house owned by Romie, or by Romie and Bernard, to vacate in order that Romie might repair it. The letter did not state that Romie intended to become a resident there.

On August 31st, Bernard Shields filed an application for an order of the Probate Court that Romie be restrained and confined in State Hospital No. 1, Fulton, Missouri. The application alleged that petitioner was so far disordered in mind as to endanger his own person and the person and property of others. The requested order was made. It, too, recited that petitioner was dangerously insane. No formal commitment to the Superintendent of the Asylum was issued.

On September 2, 1938, Bernard, as Guardian, applied to the Probate Court of Sedgwick County, Kansas, for letters of guardianship for the purpose of "selling or otherwise controlling the property within the State of Kansas belonging to Romie B. Shields." The application was based on the judgment of the Probate Court of Howard County, Missouri, made on August 31st, above set out. The order was made, Bernard took charge of Romie's Kansas property and now holds it as guardian.

Information of petitioner's incarceration reached some of his friends in Indiana —the evidence does not disclose just how— and they came to Fulton, Missouri, and employed counsel to effect his release. An application for Habeas Corpus was made to the Circuit Court of Callaway County, Missouri, which was denied. On the same day of that application formal commitment papers were furnished the Superintendent of the Asylum.

December 10, 1938, an action was filed in the Circuit Court of Howard County, Missouri, the stated purpose of which is to set aside the adjudication of insanity of petitioner by the Probate Court of that County upon the grounds of fraud and lack of jurisdiction. That action was returnable January 9, 1939, and is now pending.

Shortly prior to December 19, 1938, the acting Superintendent of the Asylum notified the Probate Court of Howard County and Bernard Shields, the Guardian of petitioner, that the Asylum would no longer keep petitioner in confinement because "he had been restored to reason." On December 19th, Bernard Shields and the Sheriff of Howard County went to the Asylum at Fulton and requested the release of petitioner to them. Some controversy arose over the question of whether custody should be transferred to Bernard or whether Romie should be released. After conference with counsel retained for petitioner at the former's office, petitioner left with Bernard and the Sheriff for the purpose, as contended by petitioner, of returning him to the Asylum for medical attention but, as asserted by Bernard, for the purpose of remaining in Bernard's custody. Bernard and the Sheriff took petitioner to Kansas City, Missouri, and placed him in a private sanitarium, without the knowledge of his counsel, first procuring an order from the Probate Court, dated December 19, 1938, directing further custody for "examination, treatment and attention." Petitioner has since remained there. The present application was filed December 23rd. Return was duly filed.

The return alleges that petitioner is in custody at a place (Kansas City, Mo.) "not within the District or the jurisdiction of this Court;" that petitioner is of unsound mind; that the Probate Court of Howard County with competent jurisdiction on proper hearing has entered a judgment adjudicating petitioner to be a resident of Howard County and a person of unsound mind, incapable of managing his affairs; that Bernard L. Shields is the Guardian of petitioner, duly appointed by the aforesaid Probate Court, and is restraining petitioner of his liberty pursuant to authority conferred by that Court; that petitioner has been declared insane (by the Howard County Probate Court) and hence is incompetent to maintain this action in his own name; that the present controversy is of a civil nature "and even if it be between citizens of different states the matter in controversy does not involve a sum or value exceeding Two Thousand Dollars ($2,000.00);" that an action is pending in Howard County Circuit Court in the name of petitioner, to set aside the judgment of the Howard County Probate Court upon the grounds of fraud and want of jurisdiction; for all of which reasons this cause may not be maintained in this Court.

The answer of petitioner admits his confinement at Kansas City, Missouri, but asserts that such confinement is illegal because the order of the Probate Court made December 19, 1938, authorizing it was made without notice to petitioner; states that petitioner's removal to Kansas City was forcible and against his will; denies that he is insane; denies that he was a resident of Howard County on the 19th of August, 1938; asserts that Bernard Shields and the Probate Judge of Howard County knew petitioner was not a resident of Howard County, and for that reason the Probate Court of Howard County had no jurisdiction to inquire into the sanity of petitioner; that they (Bernard and the Probate Judge) knew when notice of the inquiry was served on him that petitioner was confined in the Asylum at the instance of Bernard Shields and would not be released or permitted to attend the inquiry; asserts that the amount involved is more than $20,000; that he is being deprived of his liberty and property without due process of law in violation of the Fifth Amendment to the Constitution of the United States, U.S.C.A., and is being denied the equal protection of the law guaranteed to him by the Fourteenth Amendment.

The legal objections to the maintenance of this proceeding may be stated as follows:

1. Does this Court have jurisdiction to grant an application for Habeas Corpus to a mentally competent person who is being restrained of his liberty on the ground of alleged insanity by a resident and Court of Missouri when the grounds of jurisdiction asserted are want of due process and equal protection and diversity of citizenship?

2. If jurisdiction exists, is the pendency of a proceeding in a State Court between citizens of different states to determine the validity of a judgment committing petitioner a bar to a proceeding in the Federal Court the purpose of which is to review, on writ of Habeas Corpus, the legality of petitioner's restraint?

3. In a proceeding for Habeas Corpus in the Federal Court, prosecuted upon the ground that the State Court committing petitioner was without jurisdiction, is a recitation of jurisdiction found in the formal judgment of the State Court, binding upon the Federal Court to such an extent as to preclude any inquiry as to the actual existence of such jurisdiction?

4. Does jurisdiction of the Probate Court appear?

5. Is the fact that by State Statute a person once adjudicated insane by a Probate Court may upon application therefor to that court have inquiry made as to whether his sanity has been restored, a bar to an application to a Federal Court for release on Habeas Corpus?

These questions will be considered in the order stated.

■ 1. As stated at the outset, for the purpose of determining the questions now presented it is assumed that petitioner is sane and was sane at the time of his commitment. That being the situation at this time, the result is that this is not a case of parens patriae and this Court has jurisdiction. King v. McLean Asylum of Mass. Gen. Hospital, 1 Cir., 64 F. 331, 26 L.R.A. 784; Walters v. McKinnis, D.C., 221 F. 746.

■ 2. It is "a judicious and salutary general rule not to interfere with proceedings pending in the courts of the District of Columbia * * * in advance of their final determination." In re Chapman, 156 U.S. 211, loc. cit. 217, 15 S.Ct. 331, loc. cit. 333, 39 L.Ed. 401. But since the proceedings in the State Court which determined petitioner's status and directed his restraint are finally determined, the time within which an appeal could be taken from the judgment of the Probate Court having passed while petitioner was confined, the bar, if any, must exist from the pendency in the Howard County Circuit Court of the action to set aside the judgment of the Probate Court. If that proceeding was adequate this application should not be entertained. Unfortunately, it is not. Shall this petitioner be kept in restraint during the preparation, trial, appeal, etc., of the action in the Howard County Circuit Court? Obviously not, if he is illegally restrained. 29 C.J. Sec. 11, Page 19.

■ 3. This application for Habeas Corpus is a collateral attack on the judgment of the State Court. Ex parte Hans Nielsen, 131 U.S. 176, loc. cit. 182, 9 S.Ct. 672, 33 L. Ed. 118. Lack of jurisdiction may be shown in a collateral proceeding. Ruckert v. Moore, 317 Mo. 228, 295 S.W. 794. But in such a proceeding an affirmative finding of a jurisdictional fact may not be contradicted by evidence aliunde. Hartzfeld v. Taylor, 207 Mo. 236, 105 S.W. 599; In re Lennon, 166 U.S. 548, loc. cit. 553, 17 S.Ct. 658, 41 L.Ed. 1110. Therefore, the residence of petitioner may not be established in this proceeding by parol testimony. But facts appearing upon the face of the record may be utilized to show lack of jurisdiction, and where the record is silent as to a jurisdictional fact the presumption of jurisdiction of a court of general jurisdiction may be overcome by evidence of facts showing want of such jurisdiction. In re Mayfield, 141 U.S. 107, loc. cit. 116, 11 S. Ct. 939, 35 L.Ed. 635.

■ 4. The record shows affirmatively that petitioner was not present at the hearing or inquiry held by the Probate Court. The Missouri Statute requires that he be notified of the hearing *and of his right to be present.* Section 450, R.S.Mo.1929, Mo.St. Ann. § 450, p. 284. That notice is jurisdictional and the appearance of an attorney appointed by the Court is no waiver of the notice. Ruckert v. Moore, supra. That Statute (Sec. 450) without the requirement of notice had been held unconstitutional under the due process clause of both the Federal and Missouri Constitutions. Hunt v. Searcy, 167 Mo. 158, 67 S.W. 206, 214; Shanklin v. Boyce, 275 Mo. 5, 204 S.W. 187. The Missouri Supreme Court held in Hunt v. Searcy, supra, that a judgment of insanity, without notice to the person adjudged insane and without his appearance, was void, whether the Statute required notice or not because under such conditions due process was absent. The judgment of the Probate Court does not show why petitioner was not present at the hearing. The evidence in support of the present application does. The reason was not that petitioner was violently insane but because he was confined in the Asylum at the order of the Probate Court and the Guardian and not permitted to be present. If jurisdiction does not exist when a person is not notified that he is entitled to be present at the inquiry into his sanity, then with much greater reason is jurisdiction as well as due process lacking when he is notified but not permitted to do what the notice tells him he has a right to do.

■ 5. The existence of the statutory proceeding consisting of an application for a hearing to determine whether petitioner's sanity *has been restored* is no bar to this proceeding. To maintain such a proceeding petitioner must place himself in the attitude of admitting his previous insanity, admitting the propriety of his present incarceration, proceed under the legal handicap of an adjudged lunatic in a forum said to be that of his residence by a Court acting without jurisdiction.

216

Further hearing of this cause on the question of petitioner's present mental condition will be held pursuant to the agreement of the parties. That hearing will be held at Jefferson City on the 26th day of January, 1939.