J. ELMER LOMMASON, complainant-respondent,

*v.*

THE WASHINGTON TRUST COMPANY, defendant-appellant.

[Argued February 7th, 1947. Decided May 15th, 1947.]

*Mr. Wilbur M. Rush* (*Mr. Harold A. Price,* of counsel), for the appellant.

*Messrs. Cox & Walburg* (*Mr. Douglas C. Baker,* of counsel), for the respondent.

The opinion of the court was delivered by

HEHER, J.

The order of the Orphans Court appointing the appellant trust company as guardian of respondent is void for want of notice of the proceeding to the ward.

It is fundamental in due process and elemental justice that an adjudication of mental incompetency in an inquest upon a commission in Chancery in the nature of *de lunatico inquirendo* under *R. S. 3:7–35,* and the grant of letters of guardianship by the Orphans Court pursuant to *R. S. 3:7–41,* can be had only upon timely notice to the subject of the inquisition and an opportunity to be heard. Unlike the procedures in other jurisdictions, under our statute there are two separate and distinct inquiries in two independent tribunals; and it goes without saying that notice of the first and basic inquest does not constitute notice of the proceeding in the second forum for the appointment of a guardian. Where under the statute the whole may be done in one action in the one tribunal, notice of the invocation of the statutory jurisdiction comprehends the exercise of the full statutory power. Where jurisdiction of the person of the proposed ward has

been once acquired, letters of guardianship may issue in that proceeding, without special notice, upon a finding of mental incompetency, if by the statute the power is incidental to such finding; but where, as here, the authority to appoint a guardian is lodged in another tribunal, its exercise of necessity depends upon the attachment of that body's jurisdiction to the subject of the guardianship.

The appointment of a guardian has definite legal consequences as respects the ward's person and property. *Section 3:7–41, supra.* It restrains him of his liberty, and it divests him of his property or its management, control and use. The "care and safekeeping" of the subject and his property, both real and personal, are committed to the guardian; and the guardian is charged with the support and maintenance of the incompetent "out of his personal property and the profits of his real estate" and the prevention of waste or destruction of the real property. The Orphans Court is thereby enjoined to appoint "some fit person or persons as guardian or guardians" of the incompetent, having in mind, of course, the nature of the duties of the office; and this is a judicial function which by its very nature is exercisable only upon notice and an opportunity to be heard. Compare *In re Martin, 86 N. J. Eq. 265; In re Braune's Estate, 103 Atl. Rep. 412.* And notice within the concept of due process comprehends the nature of the proceeding as well as the time and place of the hearing. The principle derives from the common law, and is secured by constitutional guaranties. *Hunt v. Searcy, 167 Mo. 158; 67 S. W. Rep. 206; Supreme Council R. A. v. Nicholson, 104 Md. 472; 65 Atl. Rep. 320; Martin v. Motsinger, 130 Ind. 555; 30 N. E. Rep. 523; Hutchins v. Johnson, 12 Conn. 376; Chase v. Hathaway, 14 Mass. 222; Allis v. Morton, 4 Gray 63; McKinstry v. Dewey, 192 Iowa 753; 185 N. W. Rep. 565; 239 A. L. R. 587.* It would be alien to the genius and the traditions of our Anglo-Saxon institutions if one could be visited with such drastic restraints upon his liberty and his rights of property, not to mention the stigma of insanity, without a previous opportunity to be heard in his own behalf. There is a contrariety of view as to whether a temporary guardian may be appointed without

notice in case of emergency, for the preservation of the subject's property against an imminent peril. *McKinstry* v. *Dewey, supra; Bumpus* v. *French, 179 Mass. 131; 60 N. E. Rep. 414.* But there was no such appointment here, and so we have no occasion to consider that question.

The adjudication of mental incompetency is, of course, conclusive of that issue in the Orphans Court proceeding for the appointment of a guardian under *section 3:7–41, supra;* and therefore the interests of the incompetent on the latter inquiry are ordinarily protected through the representation of a guardian *ad litem.*

The principle finds recognition in the rules of the Orphans Court. Rule 57 directs that "In any proceeding wherein a minor or a person *non compos mentis* shall be cited or is a respondent, a guardian *ad litem* shall be appointed;" and that "In *all* proceedings wherein a minor or a person *non compos mentis* is a party in interest, before proceeding to a hearing of the cause the court shall determine whether such party in interest shall be represented either by a guardian *ad litem* or a next friend and shall not proceed until the appropriate appointment shall have been made." Rule 59 provides that, if no application shall be made by or on behalf of the minor or incompetent party within five days after the service upon him of the citation or other authoritative command of the court to appear, &c., the Orphans Court may, on application by the party instituting or prosecuting the proceedings, assign a guardian *ad litem* for the minor or incompetent party; and that in the case of an incompetent person, ten days' notice of the application "shall be served upon him and also upon his guardian appointed by the Orphans Court, if any there be, and if no such guardian, then upon such persons as the court may by order direct." And rule 60 directs that, if no application be made as provided in the foregoing rules, "the court on its own motion shall appoint a guardian *ad litem* or next friend for such minor or incompetent."

Appellant invokes rule 19 of the same court, which provides that "Where application for letters of guardianship of an incompetent is made, notice thereof shall be given to such person or persons and in such manner as the Surrogate or

Orphans Court may by order direct." By an order of the Orphans Court made on appellant's motion as the applicant for the guardianship, notice of the application was given by mail to three cousins of the ward residing in New Jersey. But that rule obviously was designed to supplement the notice to the incompetent by a notice to such of his family or next of kin as might have an interest in the proceeding on his behalf, or in the selection of the guardian. The rule is to be read in the light of its companion rules. If it be construed as dispensing with notice to the incompetent, it would to that extent be nugatory.

It was the incompetent's right, through the representation of a guardian *ad litem,* to be heard on the qualifications of the person to be designated as guardian to perform the statutory function, and to propose the selection of one near of kin, if that were deemed in his best interest. Here, for example, the judge appointed to this fiduciary office a trust company of which he was a substantial stockholder and its president and general counsel as well; and the failure of notice served to deprive the ward, or his representative, of the opportunity to raise the question of the judge's disqualification by interest. The pre-existing adjudication of lunacy has no significance in this regard; indeed, there is in that circumstance all the more reason for the protection of the incompetent's interest through a guardian *ad litem.* There are perils to one's liberty and property in the disregard of the essence of procedural due process; and this case has its lesson.

In the circumstances, it was proper for Chancery to intervene in the exercise of its inherent jurisdiction to compel discovery and an accounting by a fiduciary, notwithstanding that an accounting was pending in the Orphans Court. The ward is entitled to relief not fully obtainable in the Orphans Court; and, moreover, an accounting in equity will afford a more expeditious settlement of the matters in controversy.

But the decree declares void the sales of the real and personal property and, as we read it, directs the putative guardian to return to the ward the very property sold. It commands appellant "to deliver, pay over, assign, convey and restore unto" respondent "all the estate, real and personal, by

the said guardian received, belonging to" respondent. This was error, for the vendees are not parties to the suit, and the validity of their respective titles will not be open to inquiry conclusive upon them until they are joined as parties. Compare *McLaughlin* v. *Van Keuren*, *21 N. J. Eq. 379*. This is not to say that appellant is not accountable for the fair value of the real estate sold with the approval of the Court of Chancery, as well as the reasonable worth of the personalty. This is an accounting proceeding; and the decision of that question may well await the rendering of the account. We will not anticipate the issues which may arise out of the accounting.

We concur in the Vice-Chancellor's finding that respondent "is restored to sound reason and is fit to govern himself and manage his affairs," and that the commission *de lunatico* should be superseded, pursuant to *R. S. 3:7–46.*

Counsel fees were properly assessed against appellant.

The decree is accordingly modified and, as so modified, affirmed.

*For modification*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, WELLS, RAFFERTY, DILL, FREUND, MCGEEHAN, JJ. 13.