No. 17,310.

RICKEY *v.* THE PEOPLE.
(267 P. [2d] 1021)

Decided March 8, 1954.

Mr. BEN SLOSKY, Mr. NATHAN I. GOLDEN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy, PATRICIA H. MALOY, Assistant, for the people.

Mr. JOHN C. BANKS, JANE WOODHOUSE, amici curiae.

*En Banc.*

Mr. JUSTICE HOLLAND delivered the opinion of the court.

A PETITION to set aside and vacate all orders entered in a lunacy proceeding in the county court of the City and County of Denver was denied and the ruling of the court thereon is assigned as error. Error is confessed by the Attorney General, who appears for the People under constitutional and statutory direction. Leave was asked and granted for the filing of a brief of amici curiae. The petition to vacate the order was presented and argued on the ground that the county court was without jurisdiction.

Shortly prior to May 25, 1953, plaintiff in error, who will be referred to as Rickey, a resident of Elbert county, Colorado, came to Denver to visit his sister, Mrs. Maro Brown. He is the owner of between three and four thousand acres of land in Elbert county and has considerable interests that require his attention. He appeared to be a bit emotionally disturbed; his sister and brother-in-law tried to prevail upon him to see a doctor; he finally voluntarily entered Mt. Airy Sanitarium on May 25, 1953 for whatever examination and treatment might be necessary. The superintendent, after a fifteen-minute visit with, and observation of him, reported that he was so insane and distracted in mind as to be a possible danger to himself or others if he was allowed to remain at large in the community. A letter from Dr. J. P. Hilton, who had attended Rickey a year or more before, was obtained to the same effect, stating that he was unable to take care of himself or his affairs because of schizophrenia. On June 9, 1953, the brother-in-law, Maro Brown, filed a complaint in the county court wherein it was stated that respondent Rickey was a

resident of Kutch, Colorado; that he was, (1) So insane or distracted in his mind as to endanger his own person or property, or the person or property of another, or others, if allowed to go at large; (2) is, by reason of old age, disease, weakness of mind, feebleness of mind or ........................, incapable, unassisted, to properly manage and take care of himself or his property, and therefore would be likely to be deceived or imposed upon by artful or designing persons; and prayed that an inquiry be had as provided by law. This complaint was verified and accompanied by a letter from the city attorney requesting the permission for Brown to file the complaint, and it further was accompanied by the letter of Dr. Hilton above referred to. On that day the county court issued its order to the ex-officio sheriff of the City and County of Denver to take Rickey, who was residing at Mt. Airy, into custody, and to confine him there until further order of the court, pending the determination of the inquiry, and to deliver a copy of the complaint and order to respondent. Following this, on the 12th day of June, the court appointed a commission to examine Rickey and a guardian ad litem also was appointed. The record shows proper service on Rickey and the guardian ad litem. On the 23rd day of June 1953, a hearing and inquiry was held by the commission at Mt. Airy Sanitarium; the commission filed its report with the county court on the same day, wherein it found and stated the residence of Rickey to be Kutch, Colorado; that the commission answered the statutory questions required to be answered in such report as follows: "1. Is the person complained against so insane or distracted in his mind as to endanger his own person or property, or the person or property of another, or others, if allowed to go at large? Answer. Yes. 2. Is such person by reason of old age, disease, weakness of mind, or from any other cause, incapable, unassisted, to properly manage and take care of himself or his property? Answer. Yes. 3. Is such person so mentally defective

as to be incompetent to care for himself or his property? Answer. No. 4. Does said person have any personal or real estate? Answer. Yes. * * * Description of behavior of said person which necessitated the commitment. Schizophrenia."

On the same day the court entered its order of adjudication and commitment or custody, and found therein that Rickey's place of residence was Kutch, Colorado; that he was so insane or distracted in his mind as to endanger his own person or property, or the person or property of another, or others, if allowed to go at large; and is by reason of old age, disease, weakness of mind, or from ........................... incapable, unassisted to properly manage and take care of himself; approved the findings of the commission; and thereupon committed him to the custody of his mother, Mrs. Cora Rickey at Kutch, Colorado, until further order of the court.

On June 26 following, motion for trial by jury was filed, accompanied by a petition seeking to vacate all orders and findings theretofore made for the reason that Rickey was not a resident of the City and County of Denver, but is a bona fide resident of Elbert county, State of Colorado. A similar petition was filed by Rickey's counsel on July 3 on the ground that the court was without jurisdiction, and the adverse ruling thereon is the basis of this review.

■ It should not be necessary again to state that there must be a strict compliance with procedure in lunacy matters. And further, that the statutory provisions are the measure of the power of the tribunal whose jurisdiction is questioned; further, that in the absence of a strict compliance therewith the court is without jurisdiction to act. *Hultquist v. People,* 77 Colo. 310, 236 Pac. 995; *Kendall v. People,* 126 Colo. 573, 252 P. (2d) 91; *Barber v. People,* 127 Colo. 90, 254 P. (2d) 431.

■ To meet the requirements for an inquisition to be held in Denver, the complaint must be sufficient on its face to show jurisdiction in Denver. There is no

allegation in the complaint before us that Rickey was a resident of Denver, or even present in Denver. The most specific allegation therein was that Rickey "is a resident at Kutch, Colorado." On the face of this complaint the court was at once advised or put on notice that Rickey was not a resident of Denver, but without any showing as to his whereabouts. The information as to his whereabouts was disclosed in the letter from the city attorney. Under these circumstances, the court entered a minute order informing the sheriff that respondent "resides at Mt. Airy Sanitarium" and directed the sheriff to "immediately take respondent into custody and confine him in Mt. Airy Sanitarium." The complaint, on its face, lacked the jurisdictional requirements, and it should have served to place the court on notice of any defects therein. There is no contemplation in the statute that the facts sufficient to bestow jurisdiction are to be gleaned from a letter addressed to the clerk of the court; the requirement is a sufficient complaint that is verified and to be filed with any county court or with the clerk or judge thereof in vacation. Section 3, chapter 105, '35 C.S.A.

In its findings, the trial court clearly recognized the plain requirements of the statute, but for some reason overlooked the insufficiency of the complaint before it.

That the report of the lunacy commission is ambiguous and contradictory is settled by a casual reading thereof, and the court, acting upon such a report, could easily drift into error as to its orders thereon and about which complaint is made for the first time in this court, and for that reason we decline any discussion thereof and confine ourselves to a brief disposition of this case on the clear-cut jurisdictional question raised by the motion to vacate made in the lower court and passed upon.

We have a positive record on the question of residence. That Rickey was a resident of Kutch, Elbert county, Colorado, was alleged in the complaint, reported by the commission, certified by the court, admitted by the city attorney, stipulated to by the attorney for respondent

and the city attorney, and found as a fact by the trial court.

The jurdictional question in lunacy proceedings has been so thoroughly and definitely determined by this court in *Isham v. Miller, Sheriff,* 80 Colo. 380, 252 Pac. 353, and *Kendall v. People, supra,* that we should not be called upon to discuss the meaning of the statutory provisions again and we decline to do so in this case further than to say that a proper reading of the Isham case, supra, does not support the view that the court here acquired jurisdiction over a resident of Elbert county when he was a visitor in Denver and a voluntary patient at the sanitarium. A further study of the case reveals that the court of Rickey's home county did not lose jurisdiction by his mere absence from that county, as is particularly pointed out in *Kendall v. People, supra.* Can it be said from any recorded fact in this case that Rickey was a demented person at large and apparently dangerous to himself and sister? He was not found in this county, because he was not lost. He came here of his own volition and unfortunately delivered himself to a sanitarium for some treatment or help. He still was a resident of Elbert county and should have been taken there if a lunacy inquiry was necessary. Residence is not a matter of mere presence, but entails something more.

It is apparent that the trial court assumed that Rickey was "at large" when he was a voluntary patient in a sanitarium for mental treatment. He certainly was not at large when he decided to enter the hospital, nor while he was voluntarily there; however, because of the finding of the commission as to his condition, the court adjudged him to be so ·insane as to be dangerous to himself and others "if at large;" nevertheless, as inconsistent as it may seem, it committed him to the care of his mother and allowed him to return to his home county. The court of his residence had jurisdiction, whether he was found there or elsewhere, according to the

Isham case, supra, and we finally must say, without criticism of the county judge, whose general record discloses his ability and fairness, that he should not have assumed jurisdiction in face of the clearly established facts, the stipulation and the decisions of this court.

The judgment is reversed and the cause remanded with directions to sustain the motion to vacate and to immediately discharge the respondent.