348 P.2d 742

Virgil J. BLEVINS, Plaintiff-Appellee,

v.

Billy Ray COOK, and All Unknown Heirs of Thomas Hartsill Cook, also known as Heartsill T. Cook, and Hartsill T. Cook, Deceased, and All Unknown Claimants of Interest In The Premises Adverse To The Plaintiff, Defendants-Appellants.

No. 6611.

Supreme Court of New Mexico.

Jan. 11, 1960.

Rehearing Denied Feb. 11, 1960.

Blythe & Norvell, Clovis, for appellants.

Wesley. Quinn, Morris Stagner, Clovis, for appellee.

MOISE, Justice.

This appeal arises oút of a decree quieting title in plaintiff appellee and against defendant appellant in and to an interest in a certain piece of real estate situated in Curry County, New Mexico.

The pleadings disclose that appellee claimed to own the interest in the land by virtue of a guardian's deed executed by one Ruby Looper, Guardian of the Estate of Hartsill T. Cook, incompetent, pursuant to an order of the district court of Curry County, New Mexico, in a proceeding denominated In the Matter of the Guardianship of Hartsill T. Cook a/k/a Heartsill Cook, Incompetent, and being cause No. 11047 on the docket of said court. It appears that all the proceedings in this cause from the filing of the petition, through the order appointing the guardian, the filing and approval of her bond, the order authorizing the sale and approving the same were all filed October 16, 1953.

Prior to this time and on July 16, 1953, an Affidavit of Insanity was filed before the justice of the peace of precinct 1, Curry County, New Mexico, by Ruby Looper, followed on the same day by the issuance of a Warrant of Apprehension, together with proof that the same was served and the said Heartsill Cook brought before the district judge in a cause entitled In the Matter of Heartsill Cook, an Alleged Insane Person, being No. 10,931½ on the docket of the district court of Curry County, New Mexico. The record discloses that on the same day the district judge, by

an order entered in the cause fixed July 16, 1953, "at the hour of 1:15 o'clock p. m. at Clovis, Curry County, New Mexico" as the "time and place for hearing and examination in open court of the insanity of the said Heartsill Cook." The order further provided "that a copy of the warrant of apprehension of the said Heartsill Cook and the hearing of this charge, be served upon Ruby Looper, sister of the said alleged insane person." Thereafter, but on the same day, the alleged insane person was examined by a doctor and his findings reduced to writing and at the time fixed in the order for the hearing, the same was held.

The record of the hearing discloses the presence of one George Murphy, a member of the bar who had been appointed to represent the "patient." He announced he had conferred with Mr. Cook, and upon being asked by the court if he waived "statutory notice and jury trial" replied that "notice will be waived" and further that he was ready to proceed. Then followed the testimony of Ruby Looper, the examining doctor, and the patient, after which the court announced that "the patient will be committed" and an order of commitment was duly entered.

It should be noted that the forms used for the Affidavit of Insanity, for the Warrant of Apprehension, for the testimony of the medical examiner and for the Judgment and Order of Commitment, and the procedure followed throughout are as provided for in §§ 37–202 to 37–207, incl., N.M. S.A.1941. This is true, even though these particular sections had been repealed by Chapter 182, N.M.S.L.1953, and were no longer applicable.

Heartsill Cook was discharged from the New Mexico State Hospital on November 2, 1953, as non-psychotic, some two weeks after the sale by the guardian of the real estate in question, and is now deceased. The appellant is his son and only surviving heir and he was 24 years of age at the time of the trial herein. He was named as a defendant in the suit to quiet title, and answered therein claiming to own the interest of his father in the real estate in question, and asserted that the proceedings whereby Heartsill Cook was declared insane were void and that the court lacked jurisdiction to act because the statutory notice had not been given, and further that the notice could not be waived either in person or by attorney. Based upon the alleged void character of the proceedings, he claimed that no valid sale had been accomplished, and that he was the owner of all of the interest of his father in the real estate, and by cross-complaint asked that title be quieted in him.

The court found the issues in favor of plaintiff as to all the land not theretofore conveyed away by him. One piece of the land had been conveyed by plaintiff to one W. C. Watkins, and he had contracted to

sell other portions to J. R. Stricklin and Joe L. Davis. These persons together with Bertha Blevins, wife of plaintiff, and Ruby Looper were added into the proceedings as third party defendants. The court excluded the land conveyed to W. C. Watkins from its decree and did not quiet title thereon, but decided all the issues against the defendant, and quieted title in plaintiff to all the rest.

Appellant, in his point I asserts that "jurisdiction to judicially adjudge a person insane is obtained only by providing the alleged incompetent with proper notice as required by statute." He then states that the controlling statute is § 32–3–1, N.M.S.A.1953, which provides for adjudication of incompetency and reads as follows:

"Incompetency proceedings against any person shall be instituted in the district court of the county where the alleged incompetent person resides or may be found, by the filing of a verified petition. Such petition may be filed by any friend or relative of such person, or by any person interested in such person's property, or any part thereof, either as donor or otherwise, and shall allege that the person is, by reason of mental disability (or habitual drunkenness, as the case may be), incapable of caring for himself properly, or of managing his property. Upon the filing of such petition, the district court shall issue its order commanding such person to appear before the court on a day specified, not earlier than five (5) days after the date on which said order is issued; and shall by said order appoint some attorney to represent the alleged incompetent at such hearing; Provided, however, that the alleged incompetent shall have the right if he so desires, to conduct his defense through counsel of his own selection. Said order shall forthwith be personally served upon the defendant. Upon the day fixed by the order the court shall, upon a hearing in open court, and after taking the testimony of witnesses, enter its decree, incorporating therein its findings as to the competency of such person. Such hearing shall be conducted without a jury, unless the alleged incompetent person demands a jury trial."

As stated above, Chapter 182, N.M.S.L. 1953, repealed §§ 37–201 to 37–227, inclusive, and section 5 of said Chapter 182, compiled as § 34–2–5, N.M.S.A.1953, sets forth the judicial procedure to be followed to accomplish involuntary hospitalization of a mentally ill person. This statute provides as follows:

"a. Proceedings for the involuntary hospitalization of an individual may be commenced by the filing of a written application with the district court by a friend, relative, spouse, or guardian of the individual, or by a licensed

physician, a health or public welfare officer, or the head of any public or private institution in which such individual may be. Any such application shall be accompanied by a certificate of a licensed physician that he has examined the individual and is of the opinion that he is mentally ill and should be hospitalized, or a written statement by the applicant that the individual has refused to submit to examination by a licensed physician.

"b. Upon receipt of an application the court shall give notice thereof to the proposed patient, to his legal guardian, if any, and to his spouse, parents, and nearest known other relative or friend. If, however, the court has reason to believe that notice would be likely to be injurious to the proposed patient, notice to him may be omitted.

"c. As soon as practicable after notice of the commencement of proceedings is given or it is determined that notice should be omitted, the court shall appoint one (1) or more licensed physicians to examine the proposed patient and report to the court his findings as to the mental condition of the proposed patient and his need for custody, care, or treatment in a mental hospital.

"d. The examination shall be held at a hospital or other medical facility, at the home of the proposed patient, or at any other suitable place not likely to have a harmful effect on his health. A proposed patient to whom notice of the commencement of proceedings has been omitted shall not be required to submit to an examination against his will, and on the report of the licensed physician or physicians of refusal to submit to an examination the court shall give notice to the proposed patient as provided under subsection b of this section and order him to submit to such examination.

"e. If the report or reports of the licensed physician or physicians is or are to the effect that the proposed patient is not mentally ill, the court may without taking any further action terminate the proceedings and dismiss the application; otherwise, it shall forthwith fix a date for and give notice of a hearing to be held not less than five (5) nor more than fifteen (15) days from receipt of the report.

"f. The proposed patient, the applicant, and all other persons to whom notice is required to be given shall be afforded an opportunity to appear at the hearing, to testify, and to present and cross-examine witnesses, and the court may in its discretion receive the testimony of any other person. The proposed patient shall not be required to be present, and all persons not neces-

sary for the conduct of the proceedings shall be excluded, except as the court may admit persons having a legitimate interest in the proceedings. The hearings shall be conducted in as informal a manner as may be consistent with the orderly procedure and in a physical setting not likely to have a harmful effect on the mental health of the proposed patient. The court shall receive all relevant and material evidence which may be offered and shall not be bound by the rules of evidence. An opportunity to be represented by counsel shall be afforded to every proposed patient, and if neither he nor others provide counsel, the court shall appoint counsel.

"g. If, upon completion of the hearing and consideration of the record, the court finds that the proposed patient

"(1) Is mentally ill, and

"(2) Because of his illness is likely to injure himself or others if allowed to remain at liberty, or

"(3) Is in need of custody, care or treatment in a mental hospital and, because of his illness, lacks sufficient insight or capacity to make responsible decisions with respect to his hospitalization, it shall order his hospitalization for an indeterminate period or for a temporary observational period not exceeding six (6) months; otherwise it shall dismiss the proceedings. If the order is for a temporary period the court may at any time prior to the expiration of such period, on the basis of report by the head .of the hospital and such further inquiry as it may deem appropriate, order indeterminate hospitalization of the patient or dismissal of the proceedings.

"h. The order of hospitalization shall state whether the individual shall be detained for an indeterminate or for a temporary period and if for a temporary period, then for how long. Unless otherwise directed by the court, it shall be the responsibility of the district health officer to assure the carrying out of the order within such period as the court shall specify.

"i. The court is authorized to appoint a special commissioner to assist in the conduct of hospitalization proceedings. In any case in which the court refers an application to the commissioner, the commissioner shall promptly cause the proposed patient to be examined and on the basis thereof shall either recommend dismissal of the application or hold a hearing as provided in this section and make recommendations to the court regarding the hospitalization of the proposed patient.

"j. The head of a private hospital may and the head of a public hospital subject (except in case of medical

emergency) to the availability of suitable accommodations, shall receive therein for observation, diagnosis, care and treatment any individual ordered hospitalized by the court.

"k. The district attorneys of the various districts upon the request of the district court shall aid the court in the proceedings herein."

It is thus apparent that the procedure followed in committing Heartsill Cook, in no way resembles either that for adjudicating incompetency under § 32–3–1, N.M.S.A. 1953, or that providing for hospitalization as provided in § 34–2–5, N.M.S.A.1953.

Even though this be true, are the defects jurisdictional so as to make what the court did a nullity and thus subject to collateral attack? Only if an affirmative answer can be given to this question, can the position of appellant be upheld.

Under § 32–3–1, the proceedings are commenced by "filing of a verified petition" in district court, and under § 34–2–5 they are commenced "by the filing of a written application with the district court." Neither of these things was done.

The Affidavit of Insanity filed to commence the proceedings for adjudicating Heartsill Cook insane contains none of the allegations required by § 32–3–1, and was not in form nor was it "accompanied by a certificate of a licensed physician" as provided in § 34–2–5.

No "order commanding such person to appear before the court on a day specified, not earlier than five (5) days after the date on which said order (was) (is) issued" nor appointing an "attorney to represent the alleged incompetent" as provided in § 32–3–1 appears in the record. There is an order fixing July 16, 1953, at 1:30 p. m. as the time of the hearing. It is dated July 16, 1953. No notice was given under § 34–2–5(b) to the "proposed patient," but such notice may be dispensed with "if * * * the court has reason to believe that notice would be likely to be injurious." However, the record does not disclose any such belief on the part of the court, or any reason for omitting the notice. A notice of hearing was given to the sister of the "proposed patient." Whether or not she was the "nearest known relative or friend" might be open to some question. It would seem clear that the son was the nearest known relative, and the transcript discloses that the patient stated at the hearing that he had a son in Oklahoma, so it appears that there was knowledge concerning him. However, he being at a distance, service on the sister might under the circumstances be considered as compliance with the statute.

Try as one will, the statutory requirements to support either a determination of mental illness under § 34–2–5 or of incompetency under § 32–3–1 are not to be found in either Cause No. 11047 or Cause No. 10931½.

388

The appointment of the guardian in Cause No. 11047 is predicated upon the alleged adjudication of insanity in Cause No. 10931½ as indeed it necessarily had to be under the provisions of §§ 32–3–2 and 32–3–3. The petition was not accompanied by certified copy of the decree of adjudication, but reference is made therein to Cause No. 10931½, thus, in effect, making the entire proceeding therein a part of the record. In addition it has been included as a part of the record on appeal in this cause, without objection of appellee. It is part of the record to be considered in determining if the lack of jurisdiction is such as will make it subject to collateral attack. Baca v. Perea, 25 N.M. 442, 184 P. 482. Indeed, if a certified copy of the Judgment and Order of Commitment had been attached, it would have shown on its face that it did not comply with either of the two pertinent sections of the law, and the result would be no different.

Accordingly, aside from any questions of the sufficiency of the notice and the right to waive the same, concerning which there is a wide split of authority (see Note in 152 A.L.R. 1247; 44 C.J.S. Notice § 18, p. 71; also see State ex rel. Terry v. Holtkamp, 330 Mo. 608, 51 S.W.2d 13, where the situation was almost identical with that present here, so far as notice and waiver are concerned) it seems to us that Heartsill Cook was never legally adjudged insane, mentally ill or incompetent, and this fact appears affirmatively on the record and accordingly the adjudications both as to insanity and for appointment of a guardian may be attacked collaterally under the long recognized rules in New Mexico. McDonald v. Padilla, 53 N.M. 116, 202 P.2d 970; Bounds v. Carner, 53 N.M. 234, 205 P.2d 216; Miller v. Stiff, 62 N.M. 383, 310 P.2d 1039; Atlantic Refining Co. v. Jones, 63 N.M. 236, 316 P.2d 557; see also Jasperson v. Jacobson, 224 Minn. 76, 27 N.W.2d 788; Daly v. Spencer's Committee, 260 Ky. 19, 83 S.W.2d 502, a case very similar on its facts to the instant one; In re Jacobson's Will, 44 S.D. 409, 184 N.W. 237.

In the case of Frkovich v. Petranovich, 48 N.M. 382, 151 P.2d 337, 343, 155 A.L.R. 295, a case involving an effort by a married woman to act as head of the community without complying with the statute in this regard, although her husband had been declared incompetent and a guardian appointed, this Court had the following to say in holding her acts ineffective:

"Since the insane, drunken, imprisoned or deserting husband has not by these misfortunes or delinquencies been divested of his title or ownership of his interest in community real property, he should not be divested thereof except by the most strict compliance with the law, and then only with the best security for the preservation for his use and benefit of the proceeds of the divestiture. The procedure governing guard-

ianship seems to be adequate, at least insofar as an insane husband is concerned.

"As we have heretofore indicated, the contentions of the defendant-appellant might be sufficiently answered by saying that even if a wife could be appointed as a substitute for her insane husband as head of the community, and that so appointed she could transfer the interest of the husband in the community real property, it appears that she was not so appointed and did not purport to perform the acts here involved as a head of the community."

Paraphrasing what is last quoted above, we could say that even though a guardian to sell real estate of an insane or incompetent person can be appointed, and that when so appointed he can transfer the interest of his incompetent or insane ward in real estate, it appears that there was no adjudication of incompetency or of insanity, and accordingly he can not act as guardian.

The case of Bonds v. Joplin's Heirs, 64 N.M. 342, 328 P.2d 597, should also be mentioned. In that case, the lower court in a suit to quiet title held that proceedings for sale of minor's interest in real estate and upon which one of the parties based his claim of title was void for failure to comply with statutory provisions as to parties and service of process in the proceedings, and that this absence of compliance with statutory requirements appearing in the record was fatal. This Court in an opinion by Carmody, J., then a District Judge, sitting in this Court by designation, sustained the action of the lower court.

That proceedings to adjudicate a person incompetent, insane, or so mentally ill as to require hospitalization must be in strict accordance with the statutory requirements would seem to be clear (44 C.J.S. Insane Persons § 14, p. 68) and that proceedings where the required procedure is not followed in material respects are void and of no effect is equally clear. Ex parte McLaughlin, Mo.App., 105 S.W.2d 1020; McFarland v. Commonwealth, 249 Ky. 128, 60 S.W.2d 360; Bolmer v. United States F. & G. Co., D.C., 11 F.Supp. 560; Daly v. Spencer's Committee, supra; Lommason v. Washington Trust Co., 140 N.J.Eq. 207, 53 A.2d 175; Lommason v. Washington Trust Co., 6 N.J.Super. 572, 70 A.2d 797; Shields v. Shields, D.C., 26 F.Supp. 211; Kendall v. People, 126 Colo. 573, 252 P.2d 91; Rickey v. People, 129 Colo. 174, 267 P.2d 1021; Snyder v. Superior Court, 206 Cal. 346, 274 P. 337. The reasons for so holding in this type of case are equally, if indeed not more compelling than they were in the cases of Frkovich v. Petranovich, supra, and Bonds v. Joplin's Heirs, supra.

In the light of all the foregoing we can not escape the conclusion that Heartsill Cook, never having been adjudged incompetent or insane, the guardianship proceed-

ings accomplished nothing, and accordingly upon the death of Heartsill Cook, without having been divested of his interest in the property in question, it passed to his son, the appellant. Daly v. Spencer's Committee, supra.

In holding otherwise the lower court erred. Accordingly, the decree entered by it is reversed with instructions to set the same aside and enter a new decree in conformity with the views herein expressed.

It is so ordered.

McGHEE, C. J., and CARMODY, JJ., concur.

COMPTON, J., dissenting.

CHAVEZ, J., not participating.

COMPTON, Justice (dissenting).

The majority would reverse this judgment mainly because (a) in the insanity proceeding the court did not designate Cook's attorney in the Order, (b) that the hearing was premature, and (c) a certified copy of the insanity proceedings was not attached to the petition for the appointment of a guardian.

While these irregularities appear, the evidence conclusively shows that the trial court vigilantly protected the rights of Cook. Counsel was appointed for him by the court, and counsel represented him at the hearing.

I pose these questions. Must a raving maniac remain in custody, perhaps in a padded cell, five days or more, before he can be afforded a trial? The effect of the majority opinion is to so hold. What else could his counsel have done for him by being named in the Order that he did not do? The answer, of course, is nothing. These were mere irregularities committed by the court in the exercise of its jurisdiction, and do not render the judgments in the prior proceedings, subject to collateral attack. The majority concluding otherwise, I dissent.