457 P.2d 370

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Gilbert A. SANCHEZ, an alleged mentally ill individual, Defendant-Appellant.**

**No. 8806.**

Supreme Court of New Mexico.

July 28, 1969.

him to the United States Veterans Hospital in Albuquerque, New Mexico, for an indeterminate period of time. Sanchez appeals.

Mrs. Viola Chavez, Sanchez' sister, signed an affidavit to the effect that Sanchez was mentally ill. Subsequently, an order was entered giving notice of filing of application for temporary detention and appointing a physician to examine him. Service of the order was had on Sanchez at the Veterans Administration Hospital. Copies thereof were also mailed to Sanchez' stepfather Diego Armijo, to Mrs. Viola Chavez and Dr. James Carlan. Attorney Robert Dixon was appointed to represent Sanchez. A hearing was held on October 23, 1968, at which time Sanchez was found to be mentally ill and likely to injure himself if allowed to remain at liberty. He was committed to the Veterans Hospital for observation and treatment for an indeterminate time.

Among other matters, appellant contends that the trial court misinterpreted § 34–2–5, N.M.S.A., 1953 Comp., to require total institutionalization of Sanchez in a mental hospital for an indefinite period of time. Appellant further contends that the trial court imposed a restraint on Sanchez, which was much broader than was necessary to fulfill the legitimate state interest in protecting him from injury to himself. With these contentions we cannot agree, as the trial court followed explicitly the provisions of § 34–2–5, supra, in committing Sanchez to the Veterans Hospital.

Rodey, Dickason, Sloan, Akin & Robb, William S. Dixon, Albuquerque, for defendant-appellant.

James A. Maloney, Atty. Gen., Santa Fe, Rozier E. Sanchez, Special Asst. Atty. Gen., Albuquerque, for plaintiff-appellee.

## OPINION

TACKETT, Justice.

This action was instituted by the State of New Mexico in the District Court of Bernalillo County to obtain an order of commitment on Gilbert Sanchez, alleging that he was a mentally ill person. After a hearing, the trial court found that Sanchez was mentally ill and, by order, committed

Section 34–2–5, supra, provides in part as follows:

"a. Proceedings for the involuntary hospitalization of an individual may be commenced by the filing of a written application with the district court by a friend, relative, spouse, or guardian of the individual, or by a licensed physician, a health or public welfare officer, or the head of any public or private institution in which such individual may be. * * *

"b. Upon receipt of an application the court shall give notice thereof to the

proposed patient, to his legal guardian, if any, and to his spouse, parents, and nearest known other relative or friend. * * *

"* * *

"e. If the report or reports of the licensed physician or physicians is or are to the effect that the proposed patient is not mentally ill, the court may without taking any further action terminate the proceedings and dismiss the application; otherwise, it shall forthwith fix a date for and give notice of a hearing to be held not less than five [5] nor more than fifteen [15] days from receipt of the report.

"f. The proposed patient, the applicant, and all other persons to whom notice is required to be given shall be afforded an opportunity to appear at the hearing, to testify, and to present and cross-examine witnesses, and the court may in its discretion receive the testimony of any other person. The proposed patient shall not be required to be present, and all persons not necessary for the conduct of the proceedings shall be excluded, except as the court may admit persons having a legitimate interest in the proceedings. The hearings shall be conducted in as informal a manner as may be consistent with the orderly procedure and in a physical setting not likely to have a harmful effect on the mental health of the proposed patient. The court shall receive all relevant and material evidence which may be offered and shall not be bound by the rules of evidence. An opportunity to be represented by counsel shall be afforded to every proposed patient, and if neither he nor others provide counsel, the court shall appoint counsel.

"g. If, upon completion of the hearing and consideration of the record, the court finds that the proposed patient

(1) Is mentally ill, and

(2) Because of his illness is likely to injure himself or others if allowed to remain at liberty, or

(3) Is in need of custody, care or treatment in a mental hospital and, because of his illness, lacks sufficient insight or capacity to make responsible decisions with respect to his hospitalization, it shall order his hospitalization for an indeterminate period or for a temporary observational period not exceeding six [6] months; otherwise it shall dismiss the proceedings. If the order is for a temporary period the court may at any time prior to the expiration of such period, on the basis of report by the head of the hospital and such further inquiry as it may deem appropriate, order indeterminate hospitalization of the patient or dismissal of the proceedings.

"h. The order of hospitalization shall state whether the individual shall be detained for an indeterminate or for a temporary period and if for a temporary period, then for how long. * * *

"* * * *"

■ If there is any class of cases which should be conducted with the utmost care to observe all of the requirements of the statute, it is those cases conducted for the purpose of determining the sanity of a citizen. In re Wells' Estate, 133 Or. 155, 289 P. 511 (1930); Thoeming v. District Court, 379 P.2d 543 (Wyo.1963). Such proceedings are required to be in strict compliance with the statutory requirements. Blevins v. Cook, 66 N.M. 381, 348 P.2d 742 (1960); 44 C.J.S. Insane Persons § 14, at 68.

■ The custody of the person of those non compos mentis has been recognized and accepted as a legislative responsibility, both in this country and England, and it is not susceptible to serious challenge. In this country, the responsibility is subject to constitutional limitations. The legislatures of our sister states have recognized and exercised these same functions. We have no hesitation in holding that the right to prescribe, within constitutional bounds, a judicial method of determining a person to be a lunatic or non compos mentis, and regulating the custody and control of his

person and property, is a proper legislative function. In re Easton, 214 Md. 176, 133 A.2d 441 (1957).

The contention that Sanchez' constitutional rights have been violated is without merit. As stated in the Easton case, supra:

"The essential elements of 'due process of law' and 'the Law of the Land,' as they relate to a judicial proceeding, are notice and an opportunity to defend. * * *"

The appellant had notice and was given the opportunity to defend in the instant case.

Persons may be deprived of their liberty for the good of society or themselves. This is not a deprivation of due process of law, but a temporary restraint on liberty, based on the extent of the illness, the need for treatment and hospitalization, as well as the protection of society. Director of Patuxent Institution v. Daniels, 243 Md. 16, 221 A.2d 397 (1966).

Counsel for appellant denominates point I in his brief as "Policy of Least Abridgement" and contends that the legitimate state interest, in protecting mentally ill persons from injuring themselves or others, is overriden by the violations of constitutional personal liberties that necessarily follow from total institutionalization. However, the cases cited by appellant are distinguishable and involve situations where a statute is found unconstitutional because the legitimate purposes of the statute involved could be accomplished by a different statute, which would not violate constitutional liberties. Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960); Martin v. Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); Schneider v. State of New Jersey (Town of Irvington), 308 U.S. 147, 60 S.Ct. 146, 84 L. Ed. 155 (1939); Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). The policy which counsel has denominated

as that of "Least Abridgement" has no application to the case before us.

We are not unmindful of the case of Lake v. Cameron, 124 U.S.App.D.C. 264, 364 F.2d 657 (1966), which states it is the duty of the court to explore alternatives in lieu of complete institutionalization. However, that case is distinguishable since actions such as there present are controlled by the District of Columbia Hospitalization of the Mentally Ill Act, D.C.Code §§ 21–501 to 21–591 (Supp. V, 1966). The Act provides in part that:

"* * * '[T]he Court may order his hospitalization for an indeterminate period, or order any other alternative course of treatment which the court believes will be in the best interests of the person or of the public.' D.C.Code § 21–545(b) (Supp. V, 1966). * * *"

We do not have a similar provision in § 34–2–5, supra.

Attention is invited to the dissent in Lake v. Cameron, supra, by Judges Burger, Danaher and Tamm, wherein it is said:

"* * * Nevertheless, this Court now orders the District Court to perform functions normally reserved to social agencies by commanding search for a judicially approved course of treatment or custodial care for this mentally ill person who is plainly unable to care for herself. Neither this Court nor the District Court is equipped to carry out the broad geriatric inquiry proposed or to resolve the social and economic issues involved. * * *"

With this we agree since our New Mexico courts are faced with the same situation.

What we have said makes unnecessary a discussion of other matters raised by appellant.

The decision of the trial court is affirmed.

It is so ordered.

COMPTON, J., and GERALD D. FOWLIE, D. J., concur.