625 P.2d 99

**STATE of New Mexico,**
**Petitioner-Appellant,**

v.

**Ruth CLAYTON, Respondent-Appellee.**

**STATE of New Mexico,**
**Petitioner-Appellant,**

v.

**Santiago MARTINEZ,**
**Respondent-Appellee.**

Nos. 4615, 4735.

Court of Appeals of New Mexico.

Jan. 29, 1981.

Jeff Bingaman, Atty. Gen., Leslie D. Ringer, Chief Counsel, Beth Schaefer, Division Counsel, Santa Fe, Residential Treatment Division, Health and Environment Dept., for petitioner-appellant.

Thomas G. Rice, Las Vegas, for respondent-appellee Clayton.

Joseph M. Ulibarri, Las Vegas, for respondent-appellee Martinez.

## OPINION

WOOD, Judge.

In these consolidated appeals, the State challenges the propriety of district court orders which contain specific provisions for the habilitation of developmentally disabled adults. We discuss: (1) the trial court's authority; (2) separation of powers; and (3) attorney fees.

Both cases involve petitions by the Health and Environment Department, see § 43-1-13(C), N.M.S.A.1978, for extended residential placement of patients who had previously been admitted to the State Hospital at Las Vegas. Clayton was admitted to the hospital in 1938; Martinez in 1974.

In both cases the Department submitted an "Individual Habilitation Plan," § 43-1-13(B), supra, and in both cases, after an evidentiary hearing at which the patient was represented by counsel, § 43-1-13(D), supra, the trial court committed the patients for residential placement for a period not to exceed six months. Section 43-1-13(E), supra. This part of the trial court's orders is not contested.

*Clayton*

In June, 1979 the petition concerning Clayton alleged that she suffered from a developmental disability described as schizophrenia and moderate organic brain syndrome. Medical testimony at the evidentiary hearing on this petition, uncontradicted, was that the diagnosis of schizophrenia was inaccurate. On the motion of the attorney for the State, the trial court struck the schizophrenia allegation and found, as a fact, that the diagnosis was moderate organic brain syndrome. The uncontradicted testimony was that the appropriate placement would be the Meadows Home, that Clayton was on the list to go to Meadows, that the plan was to send her there on a bed-available basis, and that procedures had been initiated to have Clayton transferred to the Meadows Home. The testimony is also uncontradicted that without a placement at Meadows, the "least restrictive means" placement would be at the State Hospital. The trial court's order committed Clayton to the State Hospital.

In December, 1979 the Department again sought a six-month residential placement. The first December petition again alleged schizophrenia, but the second petition changed the allegation to moderate organic brain syndrome. At a hearing on January 9, 1980, the trial court was under the mistaken impression that it had instructed the State to transfer Clayton to the Meadows facility. This mistaken impression is of no

legal consequence in this case. The record of this hearing is to the effect that no attempt had been made to transfer Clayton to the Meadows facility; compare the evidence reviewed in the preceding paragraph concerning the June, 1979 hearing. The trial court continued the matter and directed that procedures be instituted immediately to transfer Clayton from the State Hospital to the Meadows facility.

A hearing on February 7, 1980 brought out only that the "Federal Government" had not processed the paper work in connection with a transfer to Meadows. The matter was continued.

At a hearing on February 21, 1980, there was discussion between the court and counsel for the State as to whether, because of federal funding, federal regulations controlled admissions to the Meadows facility, but this problem posed by the State was not developed and is not involved in this appeal. The record shows that an application for transferring Clayton to the Meadows facility was submitted to the Professional Standards Review Organization, which denied the application because of the diagnosis. The diagnosis submitted by the Department was schizophrenia rather than organic brain syndrome.

There are statements in the transcript of the February 21, 1980 hearing that patients had been admitted at Meadows since June, 1979; when the Department offered to present testimony in support of the statements, the trial court accepted the statements as true. The trial court gave counsel opportunity to present further testimony; none was offered.

The trial court found:

1. The respondent has a developmental disability which disables her so greatly that residential services would be in her best interests.

2. The developmental disability from which the respondent suffers is organic brain syndrome, secondary to "typhoid" fever.

3. Residential placement at Meadows Hospital in Las Vegas, New Mexico, is the appropriate place for the respondent to be placed at this time, and is consistant [sic] with the least drastic means principle.

\*     \*     \*     \*     \*     \*

6. The petitioner has not proceeded in good faith in trying to transfer the respondent to the proper facility by not forwarding the proper information concerning the respondent's condition to the proper authorities in order that she would receive clearance to be transfered [sic] to Meadows Hospital.

7. There is no evidence that the placement of the respondent in Meadows Hodpital [sic] would endanger the eligibility of Meadows Hospital to recieve [sic] Federal funds for its continued operation.

IT IS THEREFORE ORDERED that the respondent be committed and transfered [sic] to Meadows Hospital, Las Vegas, New Mexico as expeditiously as possible, and as soon as space is made available, for residential placement for a period not to exceed six months.

The Department's position in the trial court, and here, is that the "administrative discretion to determine who shall be admitted to the Meadows Home ... rests by Statute with the Secretary of Health and Environment for the State of New Mexico, and his designees" and not with a district judge. Thus, the State does not challenge the trial court's findings; the State's claim is that the trial court lacked authority to direct the placement of Clayton in the Meadows facility.

*Martinez*

The petition concerning Martinez alleged that he suffered from a developmental disability described as severe mental retardation. The medical testimony, uncontradicted, was that the mental retardation was "with psychosis". The individual habilitation plan submitted by the Department described Martinez's specific problems as limited communication skills, complete lack of self-care and basic living skills except for self-feeding, and lack of awareness of danger, such as sitting on a heater until

burned. Martinez's need for a secure, supervised treatment facility is not questioned.

A description of goals for Martinez included "[i]ncrease attending behaviors and attempt training of selfcare skills by enrollment in unit Behavioral training program". The plan stated a proposed staff involvement to achieve these goals as "Activity therapy, Research Staff to provide appropriate behavioral training program".

Testimony at the hearing was that the only therapy which had been provided Martinez in the past was four, 30-minute sessions each week with a music therapist; that nothing had been done to improve Martinez's language skills and that Martinez's functioning level was too low for vocational activities. The testimony, uncontradicted, was that the habilitation plan prepared by the Department was suitable for Martinez, that it involved placement at a training facility, that this "placement" contemplated the transfer of Martinez "to the mental retardation facility." Asked what kind of habilitation service would be provided if such a transfer occurred, the witness replied: "I really wouldn't know if they would offer a whole lot more."

The trial court pointed out that the State Hospital (which had been warehousing Martinez since 1974) had "no program for treating a patient of this nature" and inquired if such a program could be instituted. The Department's medical witness testified that it was "possible to do something". The social worker testified that "[s]tarting Monday, we have a psychologist". The medical witness testified, "I think we will eventually have some more activity in that direction."

The trial court's finding as to developmental disability and the need for residential services, and its commitment of Martinez to the Department, are not challenged. The trial court found:

3. The New Mexico Health and Environment Department does not have an adequate program for habilitation of mentally retarded persons at the New Mexico State Hospital.

This finding is not challenged. The State objects only to the following provision in the trial court's order:

. . . the New Mexico Health and Environment Department is hereby directed and required to provide an adequate program for mentally retarded persons at the New Mexico State Hospital.

The State contends that the trial court had no authority to enter this order.

*The Trial Court's Authority*

The State contends that the specific provisions of the trial court's orders were a usurpation of the administrative function. It points out that the Secretary of the Health and Environment Department has the "duty to manage all operations of the department and to administer and enforce the laws with which he or the department is charged." Section 9 7 6(A), N.M.S.A.1978. It argues that the proceedings in the district court were a judicial review of administrative acts and that "the function of the trial court is limited to adjudging whether the action of the agency is lawful, and does not extend to instructing the agency as to what action it must take." We disagree.

The State likens the proceedings in these cases to a review of administrative actions such as those involved in *State v. McCulloh*, 63 N.M. 436, 321 P.2d 207 (1957) and *Coe v. City of Albuquerque*, 76 N.M. 771, 418 P.2d 545 (1966). The State argues that judicial review is limited to whether the administrative action being reviewed was permissible and reasonable under the administration's authority. See *Covington v. Harris*, 419 F.2d 617 (D.C.Cir.1969).

■ The State's position is based on a false premise; judicial review of administrative action is not involved. The Department petitioned the court for an order committing the patients to residential care. Section 43 1 13, supra, does not provide for judicial review of the Department's views toward residential care; rather, it provides for an adversary hearing with the adversaries, in these cases, being the Department and the patients. See § 43 1 13(D), supra.

The trial court orders residential care only upon "clear and convincing evidence". Section 43–1–13(E), supra.

■ The State also asserts: "[I]n the absence of any showing of the agency's failure to perform, or negligence in the performance of, its duty to provide an adequate accomodation [sic] for the patient, the authority of a district court to rule in a commitment hearing is limited to those powers specifically given to it by the commitment statute." We do not consider, in these appeals, the unchallenged findings to the effect that the Department had failed to perform. We agree with the State that the trial court's powers are those given by the applicable statutes. Compare *Carter v. Montoya*, 75 N.M. 730, 410 P.2d 951 (1966). Legislation authorizing action by a court in connection with mental health and developmental disabilities is a proper legislative function. *State v. Sanchez*, 80 N.M. 438, 457 P.2d 370 (1969).

Section 43–1–8, N.M.S.A.1978 provides:

Each resident client receiving developmental disabilities services shall have the right to prompt habilitation services pursuant to an individualized habilitation plan and consistent with the least drastic means principle.

Section 43–1–3, N.M.S.A.1978 states:

K. "habilitation" means the process by which professional persons and their staff assist the developmentally disabled client in acquiring and maintaining those skills and behaviors which enable him to cope more effectively with the demands of his own person and of his environment and to raise the level of his physical, mental and social efficiency. Habilitation includes but is not limited to programs of formal, structured education and treatment[.]

Section 43–1–9, N.M.S.A.1978 provides for an *individual* habilitation plan, which is to include a statement "of the least restrictive conditions necessary to achieve the purposes of . . . habilitation[.]"

Section 43–1–3(D), supra, defines "consistent with the least drastic means princi-

ple" to include habilitation "at the suitable available facility closest to the client's place of residence[.]"

■ The foregoing provisions are guides for the trial court in ordering residential placement under § 43–1–13(E), supra, because an order of residential placement must be "the least drastic means." Section 43–1–13(F), supra, provides:

F. The court shall order that placement which is least restrictive to the client, and may order attendance and participation as a nonresident in habilitation programs conducted at residential or nonresidential facilities.

"Placement" in § 43–1–13(F), supra, means residential placement.

■ There is no dispute that the placement of Clayton at the Meadows facility was appropriate, the least restrictive and consistent with the least drastic means. The trial court had authority to order such placement under § 43–1–13(E) and (F), supra.

The State asserts the trial court had authority to require an adequate program for Martinez. "The court was empowered to condition the commitment on provision of an adequate program . . . ." We agree; such authority is found in the statutory provisions cited above.

■ The State contends, as to Martinez, that the trial court lacked authority "to dictate to the agency the place where the program must be developed." This argument overlooks the evidence that the Department, at the time of the evidentiary hearing, provided *no* adequate programs for persons like Martinez, and the evidence that the only program, possibly adequate, was the program being instituted at the State Hospital. If the trial court had ordered residential placement for Martinez at any place other than at the State Hospital, the order would not have been supported by the clear and convincing evidence required by § 43–1–13(E), supra. Instead of a "dictated" decision, the trial court based its decision on the evidence. The placement at the State Hospital, with the requirement of an

adequate program, was authorized by § 43 1–13(E) and (F), supra.

■ Although the trial court had authority to order the specific placement for Clayton and the specific placement with adequate program for Martinez, the order in the Martinez case must be modified because it is too broadly worded. The trial court required the Department to "provide an adequate program for mentally retarded persons at the New Mexico State Hospital." (Partial emphasis ours.) This order was improper because it went beyond the issues in the case. The petition for residential care involved only Martinez and that was the matter that was litigated. There was no issue as to adequate programs for *all* mentally retarded persons at the State Hospital. That part of the order that refers to mentally retarded persons is erroneous. *Coe v. City of Albuquerque,* supra. Upon remand, the order is to be corrected to refer only to Martinez.

### Separation of Powers

The State contends that the Department exercises "an executive function in determining where and how residents of state institutions will receive treatment .... We say that a district judge may not make decisions concerning the whereabouts of a particular client's treatment.... [The] method of proceeding, such as was attempted here, constitutes an exercise by one branch of state government of powers and duties belonging to another."

We have held that the trial court had statutory authority to require the specific provisions contained in the commitment orders of Clayton and Martinez. Because of this statutory authority, the issue is not whether the trial court usurped executive functions in violation of constitutional separation of powers. The separation of powers argument, if there is one, would be whether the Legislature had authority to confer such authority on the trial court. The State does not contend that the statutory provisions, cited in this opinion, were in violation of the constitutional separation of

powers. Thus, no constitutional issue is before us. On the merits, see *Fellows v. Shultz,* 81 N.M. 496, 469 P.2d 141 (1970); *State v. Sanchez,* supra; *Albuquerque Met. Arroyo Flood Con. A. v. Swinburne,* 74 N.M. 487, 394 P.2d 998 (1964); *State ex rel. Harvey v. Medler, District Judge,* 19 N.M. 252, 142 P. 376 (1914).

### Attorney Fees

At a hearing on a petition for residential care of developmentally disabled adults, "the proposed client shall be represented by counsel," and there "shall be a right to an expeditious appeal." Section 43–1–13(D), supra.

Section 43-1-4, N.M.S.A.1978 reads:

A. All clients shall be represented by counsel at all proceedings under the code, and shall be entitled to obtain advice of counsel at any time regarding their status under the code.

B. When a client has not retained his own attorney and is unable to do so, the court shall appoint counsel to represent him. When appointing counsel, the court shall give preference to nonprofit organizations offering representation to mentally ill and developmentally disabled persons. When a client is not indigent, he shall be liable for the cost of his legal representation.

Clayton and Martinez were represented by counsel in the trial court and in these appeals. The trial court awarded attorney fees, and there is no issue as to the awards. The question is whether we should award attorney fees for the services of counsel on appeal.

■ The fact that counsel were appointed in the trial court, § 43–1–13(C), supra, does not determine whether Clayton and Martinez were indigent. If they were not indigent, they are liable for the cost of their legal representation. Section 43–1–4(B), supra. If they were indigent, then an award of attorney fees would be proper.

The trial court did not make a finding as to indigency. Upon remand, such a finding is to be made. If the trial court finds that Clayton and Martinez were indigent, then counsel in each case is awarded $1,000.00 for his appellate service in these consolidated cases.

The order of the trial court, in each case, is affirmed; however, the Martinez case is remanded with instructions to limit the applicability of the order to Martinez, and each case is remanded with instructions to determine the question of indigency for the purpose of attorney fees.

IT IS SO ORDERED.

HERNANDEZ, C. J., and ANDREWS, J., concur.